## UNITED STATES v. AMERICAN FEDERATION OF MUSICIANS et al.

### No. 4541.

District Court, N. D. Illinois, E. D.

Oct. 14, 1942.

---

Thurman Arnold, Asst. Atty. Gen., J. Albert Woll, U. S. Dist. Atty., of Chicago, Ill., and Holmes Baldridge, of Washington, D. C., Victor O. Waters, of Washing, D. C., Daniel B. Britt, of Chicago, Ill., and Robert Diller, of Washington, D. C., Sp. Assts. to Atty. Gen., for government.

Joseph A. Padway, of Milwaukee, Wis., Henry A. Friedman, of New York City, and David Katz, of Chicago, Ill., for defendants.

Sidney M. Kaye, of New York City, and Sonnenschein, Berkson, Lautmann, Levinson & Morse, of Chicago, Ill., for National Assn. of Broadcasters.

BARNES, District Judge.

This cause comes on to be heard on the motion of the Government for a preliminary injunction, and on that of the defendants to dismiss the complaint.

The plaintiff is the United States of America. The defendants are the American Federation of Musicians and its officers and directors. The American Federation of Musicians is alleged to have approximately 140,000 members, comprising virtually all musicians in the nation who make music for hire.

Paragraphs 13 to 17, inclusive, of the complaint describe the offenses charged and the effect of the conspiracy charged. Those paragraphs are as follows:

"IV

"Offenses Charged

"13. That the defendants named herein, each well knowing the matters and things hereinbefore alleged, have been and are now engaged in the United States, and within the Northern District of Illinois, Eastern Division, in a wrongful and unlawful combination and conspiracy in restraint of the aforesaid interstate trade and commerce in phonograph records, electrical transcriptions and radio broadcasting, in violation of Section 1 of the Act of Congress of July 2, 1890, entitled 'An act to protect trade and commerce against unlawful restraints and monopolies' (15 U.S.C.A. § 1), and have conspired to do all the acts and things, and to use all means necessary and appropriate to make said restraints effective, including the means, acts and things hereinafter more particularly alleged;

"14. That for the purpose of restraining and destroying all interstate commerce in phonograph records and electrical transcriptions; of procuring, monopolizing and controlling all performances of musical entertainment; of eliminating competition entirely between so-called 'transcribed' or 'canned' music and music produced through live musicians, the defendants have arranged and agreed among themselves to do the following things:

"(a) to prevent the manufacture and sale of all phonograph records and electrical transcriptions;

"(b) to eliminate from the market all manufacturers, distributors, jobbers and retailers of phonograph records and electrical transcriptions;

"(c) to prevent radio broadcasting stations from broadcasting musical compositions recorded on phonograph records and electrical transcriptions;

"(d) to prevent the use of phonograph records in so-called 'juke boxes' located in hotels, restaurants and dance halls;

"(e) to prevent the use of phonograph records in the home;

"(f) to prevent the sale of phonograph records to radio broadcasting stations and 'juke box' operators by requiring manufacturers to boycott all distributors, jobbers, and retailers who sell such records

to radio broadcasting stations and 'juke box' operators;

"(g) to eliminate all musical performances over the radio except those performed by members of the A. F. of M.

"(h) to require radio broadcasting stations to hire unnecessary 'stand-by' musicians, members of the A. F. of M., whose services are neither necessary nor desired, by requiring radio net-works to boycott affiliated stations which refuse to meet defendants' demands for the hiring of 'stand-by' musicians;

"15. That for the purpose of forming and effectuating the aforesaid conspiracy, the defendants by agreement and concert of action have done the things which, as hereinbefore alleged, they conspired to do, and more particularly have done, among others, the following acts and things:

"(a) On June 25, 1942, the defendant, James C. Petrillo notified Decca Records, Inc., Columbia Recording Corporation, and RCA Manufacturing Company, Inc., that their licenses from the A. F. of M. for employment of its members in the making of musical recordings would expire July 31, 1942, and would not be renewed; that from and after August 1, 1942, the members of the A. F. of M. would not play or contract for recordings, transcriptions, or any other form of mechanical reproduction of music;

"(b) On July 16, 1942, the defendant, James C. Petrillo, notified the National Broadcasting Company that it must cancel the Saturday afternoon symphonic broadcasts of the high school orchestras from the National Music Camp at Interlochen, Michigan, and such demand was met. These concerts have been broadcast every summer for twelve years as a part of a national musical educational program for young musicians;

"(c) On July 27, 1942, the defendant, A. F. of M., acting through its local union, ordered all A. F. of M. bands to boycott all radio stations in Southern California affiliated with the Don Lee Broadcasting System for the purpose of forcing Radio Station DFRC of San Francisco, an affiliate of the Don Lee Broadcasting System, to hire a larger and more expensive orchestra, although no dispute of any kind existed between the A. F. of M. locals and any radio station affiliated with the Don Lee Broadcasting System except Radio Station KFRC;

"16. That the combination and conspiracy herein charged does not involve or grow out of any dispute concerning terms or conditions of employment; that a purpose of the conspiracy is to eliminate from the market the manufacture, sale and use of musical compositions mechanically recorded on phonograph records and electrical transcriptions unless the persons engaged in such businesses enter into agreements with the defendant union to hire such useless and unnecessary labor as the defendant union may demand; that a further purpose of said conspiracy is to exclude from the market the competition of anyone who does not exclusively employ members of the defendant union;

"V

"Effect of the Conspiracy

"17. That the defendants have adopted the means and engaged in the activities aforesaid, with the intent, purpose and effect of unlawfully destroying all manufacture and sale in interstate commerce of phonograph records and electrical transcriptions; of eliminating all competition between music produced by mechanical means and music produced by live musicians; of depriving the public of an inexpensive means of entertainment over the air, in restaurants, hotels and dance halls, and in the home."

The Government, in support of its motion for a preliminary injunction, has filed affidavits by public officials, record manufacturers, operators of small independent radio stations, operators of automatic, coin operated phonographs, operators of restaurants, hotels and recreation centers and operators of national radio networks. The defendants object to the court's considering these affidavits.

The Government contends, first, that the exemption of labor from the anti-trust laws is limited to controversies involving "terms or conditions of employment" and, under this heading, the Government says:

"Three questions remain, which have not been specifically considered by the Supreme Court, with respect to what constitutes legitimate labor union activity under the anti-trust laws: (1) whether a union may use organized coercion to destroy legitimate businesses because such businesses have introduced or are using labor-saving devices or improved mechanical methods which reduce the demand for la-

bor; (2) whether a union may use organized coercion to compel its employer to maintain obsolete or inefficient methods and to refuse to permit the introduction of new mechanical improvements in order to force the hiring of unnecessary labor; and (3) whether a union may use organized coercion to prevent voluntary groups who do not seek employment from rendering services without pay", and that "all of these questions are raised in the instant case."

The Government's second contention is that the activities complained of do not involve "terms or conditions of employment" and hence are subject to prosecution under the Sherman Act as a combination in restraint of interstate trade or commerce. Under this heading the Government says that:

"The complaint charges the defendant union with three types of activity. First, it charges that defendant union has refused to permit its members to be hired by manufacturers for the purpose of making phonograph records and electrical transcriptions. The effect of such a ban is to destroy not only these industries, which furnish substantial employment to members of the union, but other legitimate industries which are dependent upon such manufacturers' product for existence but which do not employ members of defendant union, such as manufacturers and operators of juke boxes, small independent radio stations, and distributors and retailers of records and transcriptions. Second, the complaint charges that defendant union requires radio broadcasting stations to pad their pay rolls with stand-by musicians whose services are neither necessary nor desired. And third, it charges an attempt by defendants to eliminate all musical performances over the radio except those presented in person by members of the American Federation of Musicians. This last charge is concerned largely with the union's attempt to exclude amateur or voluntary performances from the air."

The Government contends that none of these activities is permissible · under the law and it cites: Columbia River Packers' Ass'n v. Hinton, 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. 750; Opera on Tour, Inc., v. Weber, 285 N.Y. 348, 34 N.E.2d 349, 136 A.L.R. 267; Loew's, Inc., v. Basson, D.C.S.D.N.Y., 46 F.Supp. 66, and Scavenger Service Corp. v. Courtney, 7 Cir., 85 F.2d 825.

The Government's third contention is that even though it be assumed that the activities of defendants concern "terms and conditions of employment" they represent an attempt by the union to force employers to combine with it for the purpose of restraining interstate trade and commerce in phonograph records, electrical transcriptions and radio broadcasting, and are therefore a combination between labor and nonlabor groups, which is not exempt from the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note.

The National Association of Broadcasters, by leave of court, filed a brief as amicus curiae wherein it made contentions like unto those of the Government.

The defendants' motion to dismiss assigns two grounds for dismissal: First, because the court lacks jurisdiction by reason of the Norris-LaGuardia Act, since the complaint sets forth a case involving or growing out of a labor dispute; and, Second, because the complaint fails to state a claim against defendants upon which relief can be granted.

In their argument in support of their motion to dismiss the defendants say that the complaint merely alleges an agreement by members of a labor organization peacefully to refuse to work for employers in an effort to obtain, extend and preserve employment opportunities and that, accordingly, the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., precludes the court from granting the relief sought, and that this is true even though it be assumed that a violation of the Sherman Anti-Trust Act has been alleged. In support of this contention, the defendants cite a large number of cases, including: Milk Wagon Drivers' Union v. Lake Valley Farms Products, Inc., 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; Lauf v. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; Levering & Garrigues Co. v. Morrin, 2 Cir., 71 F.2d 284; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Senn v. Tile Layers Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; Wilson & Co. v. Birl, 3 Cir., 105 F.2d 948; Green v. Obergfell, 73 App. D.C. 298, 121 F.2d 46, 138 A.L.R. 258; United States v. Weirton Steel Co., D.C., 7 F.Supp. 255; United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788, and Blankenship v. Kurfman, 7 Cir., 96 F.2d 450.

In their argument, the defendants further say that no violation of the Sherman

Act is alleged because there is no allegation that defendants are engaged in a business enterprise or are competing commercially in the sale of products and are seeking, on behalf of themselves or as agents for others, to suppress such competition so as to control price or discriminate between would-be purchasers or otherwise deprive the public of the benefit of free competition, and they cite Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L. Ed. 1311, 128 A.L.R. 1044, and Gundersheimer's, Inc., v. Bakery & Conf. W. International Union, 73 App.D.C. 352, 119 F. 2d 205.

The defendants further say that in any event the acts complained of come under the conduct enumerated under Section 20 of the Clayton Act, 29 U.S.C.A. § 52, and as such do not violate any law of the United States, and cite: United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L. Ed. 788; United States v. Carrozzo, D.C., 37 F.Supp. 191, affirmed United States v. International Hod Carriers, 313 U.S. 539, 61 S.Ct. 839, 85 L.Ed. 1508; United States v. Building, etc., Council, 313 U.S. 539, 61 S.Ct. 839, 85 L.Ed. 1508; United States v. United Brotherhood, etc., 313 U.S. 539, 61 S.Ct. 839, 85 L.Ed. 1508; United States v. International Hod Carriers, 313 U.S. 539, 61 S.Ct. 839, 85 L.Ed. 1508.

This case unquestionably involves or grows out of a dispute. The parties to the dispute are, on the one hand, the defendant American Federation of Musicians and its members, who, as employees, make music for hire, and, on the other hand, manufacturers of phonograph records and electrical transcriptions and radio broadcasting companies, who, as employers, employ musicians to make music. The subject of the dispute is, generally speaking, the question as to whether the members of the union shall be employed to make all the music that is to be made or shall be employed to make only a part of it, the remainder being made by means of phonograph records and electrical transcriptions and by amateur musicians. The union and its members contend that the members of the union should have the exclusive right to make music, while the phonograph record and electrical transcription manufacturers and broadcasting companies contend for the opportunity to have music made by means of phonograph records and electrical transcriptions and by amateurs.

The Norris-LaGuardia Act, 47 Stat. 70, 73, c. 90, § 13(c), 29 U.S.C.A. § 113(c) provides "The term 'labor dispute' includes any controversy concerning terms or conditions of employment" etc. The Government says that the activities complained of in the case at bar do not involve "terms or conditions of employment" and that, accordingly, the Norris-LaGuardia Act is not applicable. It has been observed that the union and its members here contend, in a sense, for a "closed shop" so far as phonograph records, electrical transcriptions and amateur musicians are concerned. The question then is, Is this contention one in respect of a "term or condition of employment?" Congress itself answered this question quite definitely in the National Labor Relations Act, 49 Stat. 449, 452, c. 372, § 8(3), 29 U.S.C.A. § 158(3) when it said: "* * * nothing in section 1 to 16 [sections 151–166] of this title, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization * * * to require as a *condition of employment* membership therein." (Italics supplied.) Here Congress itself speaks of an agreement for a closed shop as a "condition of employment."

The court is satisfied that the union and its members and the employers of the latter are disputing in respect of a "condition of employment" and that, accordingly, the dispute involved in this case is a "labor dispute" within the meaning of the Norris-LaGuardia Act. That Act further provides:

"Sec. 4. No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

* * * * * *

"(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;

"(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

"(i) Advising, urging, or otherwise causing or inducing without fraud or violence

the acts heretofore specified, regardless of any such undertaking or promise as is described in section 3 of this Act [section 103 of this title]." 29 U.S.C.A. § 104.

"Sec. 5. No court of the United States shall have jurisdiction to issue a restraining order or temporary or permanent injunction upon the ground that any of the persons participating or interested in a labor dispute constitute or are engaged in an unlawful combination or conspiracy because of the doing in concert of the acts enumerated in section 4 of this act [section 104 of this title]." 29 U.S.C.A. § 105.

In view of the foregoing provisions, jurisdiction does not exist to grant any of the injunctive relief here sought.

 The court is further of the opinion that the acts complained of are of the kind specified in the second paragraph of Section 20 of the Clayton Act, 38 Stat. 738, c. 323, § 20. Section 20 of that act is as follows:

"Sec. 20 [§ 52]. No restraining order or injunction shall be granted by any court of the United States, or a judge or the judges thereof, * * *.

"And no such restraining order or injunction shall prohibit any person or persons, whether singly or in concert, from terminating any relation of employment, or from ceasing to perform any work or labor, or from recommending, advising, or persuading others by peaceful means so to do; * * * or from peacefully persuading any person to work or to abstain from working; or from ceasing * * * to employ any party to such dispute, or from recommending, advising, or persuading others by peaceful and lawful means so to do; * * * *nor shall any of the acts specified in this paragraph be considered or held to be violations of any law of the United States.*" (Italics supplied.)

Accordingly, the acts complained of may not be considered or held to be violations of any law of the United States.

■ The third contention of the Government deserves only a word. Here the employees seek only a contract with their employers for a "closed shop" (in a sense large enough to include a shop which excludes not only non-union workers but also machines) and they seek this contract primarily for their (the servants') benefit and not for the benefit of a non-labor group. In the court's opinion United States v.

Brims, 272 U.S. 549, 47 S.Ct. 169, 71 L.Ed. 403, and like cases, are not pertinent here.

The defendants' motion to dismiss should be granted.

The court has been guided to the conclusions herein expressed by the decisions of the Supreme Court of the United States in United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788, and United States v. International Hod Carriers, 313 U.S. 539, 61 S.Ct. 839, 85 L.Ed. 1508, affirming United States v. Carrozzo, D.C., 37 F.Supp. 191.

The conclusions herein expressed make it unnecessary to consider other issues raised by the parties.