BROTHERHOOD OF RAILROAD CAR-
MEN OF AMERICA, LOCAL NO. 429,
a voluntary association, individually and
as representatives of certain employees
of plaintiff represented by said organi-
zation, John Brokena, individually and
as President of said organization, Paul
Jones, individually and as Local Chair-
man of said organization, Charles P.
Harris, individually and as Vice-Chair-
man of said organization, and J. R.
Baughman, G. E. Greathouse and Rob-
ert F. Malone, as individuals and as
members of a class who fairly and ade-
quately represent certain carmen aiding,
abetting, participating in or assisting in
a certain work stoppage hereinafter re-
ferred to, Appellants,

v.

CHICAGO AND NORTH WESTERN
RAILWAY COMPANY, a cor-
poration, Appellee.

No. 17962.

United States Court of Appeals
Eighth Circuit.

Dec. 29, 1965.

Rehearing Denied March 1, 1966.

Gilbert Feldman, of Kleiman, Cornfield & Feldman, Chicago, Ill., Bernard Kleiman, Gilbert A. Cornfield and Linzey D. Jones, Chicago, Ill., and Robert E. Conley, Des Moines, Iowa, for appellants.

Frank W. Davis, Jr., Davis, Huebner, Johnson & Burt, Des Moines, Iowa, R. W. Russell, Chicago, Ill., for appellee.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and MEHAFFY, Circuit Judges.

VOGEL, Chief Judge.

This case arises out of a dispute involving defendant-appellant, a union, and certain members thereof, and plaintiff-appellee, a railway carrier. The dispute gave rise to a strike which the appellee successfully sought to enjoin in the District Court. Appellants appeal from the trial court's findings of fact, conclusions of law and order making the injunction permanent.

The appellee (hereafter carrier) is a railway carrier engaged in interstate commerce and servicing nine midwestern states. It is a corporation organized and existing under the laws of the State of Wisconsin with its general office at Chicago, Illinois. Defendants below included the Brotherhood of Railroad Carmen of America (both the national organization and Local No. 429 of Clinton, Iowa, although the former was exonerated of any responsibility in this action by the trial judge and is not a party to this appeal) and officers and representatives thereof (as individuals and as members of the union).

The facts giving rise to the issuance of the injunction are as follows. On Wednesday, December 9, 1964, between 7:00 and 7:15 a. m., appellant Paul Jones, Chairman of appellant Local 429 and an employee of the carrier in its car shop at

Clinton, Iowa, engaged in a conversation with one Craig Fenton, employed by the carrier as an assistant foreman in the car shop. The trial court found that during this conversation Jones accused Fenton, in foul and abusive language, of mistreating one Lloyd Nash, a member of Local 429 and an employee of carrier immediately under the supervision of Fenton, and of being the cause of a stroke allegedly suffered by Nash. Jones threatened Fenton with bodily harm by inviting him outside the premises to settle their differences through physical violence.

Later that morning Richard E. Powers, the superintendent of the Clinton car shop, looked into the incident between Jones and Fenton. Lloyd Nash, the subject of Jones' complaint to Fenton, was present and stated that he had had an attack over the week-end, causing him to be absent from work on Monday, December 7th, and Tuesday, December 8th. Fenton knew of Nash's absence from work, having been notified by the timekeepers that Nash had telephoned in to the effect that he was sick. He was not aware, however, that Nash had suffered any disability. Nash told Larry A. Bengston, the carrier's general foreman at the Clinton car shop, that he had not been overworked and, in response to a question, said, "Larry, you've always been very fair with me." Powers testified at trial that Jones had not followed ordinary grievance procedures (set out in f.n. 1, infra) when he talked with Fenton concerning Nash. In light of the above, Powers told Jones that he thought Jones was in error and that an apology was due Fenton. Jones politely refused to make any apology. Powers again requested an apology, and after Jones again refused, Jones was removed from service as of 10:15 a. m. on December 9, 1964, pending an investigation pursuant to the provisions of Rule 35 of a prior agreement entered into between the carrier and its employees (hereafter the carrier-employee agreement) of the Clinton car shop.[1]

The trial judge found that after the suspension, Jones individually and as

---

1. The pertinent parts of such agreement are set out here. Rule 20 thereof provides:

"Employes wishing to be absent from work must obtain leave of absence from the foreman whenever practicable to do so, and foremen will endeavor to grant leave of absence when requested."

Rule 32 provides:

"Should any employe subject to this agreement believe he has been unjustly dealt with or any of the provisions of this agreement have been violated, he may present case to foreman, which shall be presented within ten days from date of the cause for complaint or violation. Failing to get satisfaction, the case shall be taken to the foreman, general foreman, master mechanic, district master car builder, or shop superintendent, each in their respective order, by the duly authorized local committee or their representatives.

"All local conferences shall be held by appointment during regular working hours, and if stenographic report of investigation is taken, a copy of same shall be furnished.

"If the result of such conference still be unsatisfactory, the duly authorized general committee, or their representatives, shall have the right of appeal, preferably in writing, to the higher officials designated to handle such matters in their respective order, and conference shall be granted within ten days of application."

Rule 33 provides:

"Should the highest designated official or his duly authorized representative and the duly authorized representative of the employe fail to agree, the case shall then be handled according to the procedure required by the provisions of the Transportation Act of 1920, or revisions thereof. Prior to the assertion of grievances as herein provided, and while questions of grievances are pending, there will neither be a shut-down by the employer nor a suspension of work by the employe or employes."

Rule 35 provides:

"No employe will be discharged for any cause without first being given an investigation.

"In extreme cases, suspension pending a hearing, which shall be prompt, shall not be deemed a violation of this rule.

"If it is found that charges are not sustained, such employe shall be returned to service and paid for all regular time lost."

Chairman of Local No. 429, made false representations to other employees at the car shop that a strike had been authorized by the National Brotherhood of Railroad Carmen of America. This led to a work stoppage at about 1:00 p. m. on December 9th and a complete shut-down of the car shop by 7:00 a. m. on December 10th. Other appellants besides Jones also actively encouraged the strike by posting signs, by carrying placards, and by talking to their fellow employees. These appellants were found to have left their work in violation of Rule 33 of the carrier-employee agreement referred to previously (and set out at f.n. 1, supra). The court found that the national union organization and its officers in no way knew about or encouraged the unauthorized strike and they were absolved of any responsibility therefor.

In the evening of December 9th the carrier filed a verified complaint in the United States District Court for the Southern District of Iowa, seeking a temporary restraining order and a preliminary injunction. The carrier alleged a wrongful and unlawful work stoppage in violation of the requirements of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., possible irreparable injury as a result of this violation, and an inadequate remedy at law. The requested restraining order was issued by the court on December 9, 1964, at 11:00 p. m. By its terms it was to expire on December 18, 1964, at 11:00 a. m. The expiration date was later extended until the time of the issuance of the permanent injunction. The temporary restraining order was similar in its terms to the permanent injunction that was eventually issued. Copies of the restraining order were served, together with the summons and complaint, on ap-

pellants or their representatives between the hours of 3:30 a. m. and 5:30 a. m. on December 10, 1964. Despite the issuance of the restraining order and the attendant publicity, the work stoppage at the car shop continued through the 3:30 p. m. shift of Friday, December 11th. The men returned to work on Monday, December 14th, apparently as a result of a radio plea to do so that was made on December 13th by some of the appellants.

On December 18, 1964, hearings were begun. The injunction proceeding was tried concurrently with contempt proceedings arising out of alleged violations of the temporary restraining order. On December 24, 1964, the permanent injunction involved on this appeal was granted. It was based on a finding by the trial judge that the suspension of Jones was justified since his alleged grievance was not handled in accordance with mandatory provisions of the Railway Labor Act,[2] nor in accordance with relevant provisions of the carrier-employee agreement. The trial judge reserved jurisdiction on the contempt issue.

Appellants contend:

"The District Court erred in its conclusion that the provisions of the Norris-LaGuardia Act are not applicable to this case, fallaciously reasoning that there could not be a labor dispute within the meaning of that Act upon a failure of the defendants to comply with the mandatory provisions of the Railway Labor Act."

If the appellants are correct in their contention that the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., should have

2. At 45 U.S.C.A. § 153 First, a National Railroad Adjustment Board is provided for. Under subsection (i) of 45 U.S.C.A. § 153 First:

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

applied in this case, it is their further contention that the injunction granted by the trial judge is void since it was issued in violation of the proscriptions and requirements imposed under the Norris-LaGuardia Act.[3] For reasons that will become apparent, we believe that even if the dispute in controversy could be classified as a labor dispute within the meaning of the Norris-LaGuardia Act,[4] the

3. In pertinent part the Norris-LaGuardia Act provides that no injunction can issue in a labor dispute unless the following standards are met:

"§ 107. *Issuance of injunctions in labor disputes; hearing; findings of court; notice to affected persons; temporary restraining order; undertakings.*

"No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

"(b) That substantial and irreparable injury to complainant's property will follow;

"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

"(d) That complainant has no adequate remedy at law; and

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

"Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property: * * *."

"§ 109. *Granting of restraining order or injunction as dependent on previous findings of fact; limitation on prohibitions included in restraining orders and injunctions.*

"No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of such restraining order or injunction; and every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court as provided in this chapter."

4. As defined by the Norris-LaGuardia Act at 29 U.S.C.A. § 113(c),

"The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

Concerning this definition, the Supreme Court has stated, through Mr. Justice Black, in Order of Railroad Telegraphers v. Chicago & N. W. Ry., 1960, 362 U.S. 330, 335–336, 80 S.Ct. 761, 764, 4 L.Ed. 2d 774, rehearing denied, 362 U.S. 984, 80 S.Ct. 1056, 4 L.Ed.2d 1019:

" * * * Congress made the definition broad because it wanted it to be broad. There are few pieces of legislation where the congressional hearings, committee reports, and the language in the legislation itself more clearly point to the necessity for giving an Act a construction that will protect the congressional policy the Act adopted. Section 2 of this Act [29 U.S.C.A. § 102] specifies the public policy to be taken into consideration in interpreting the Act's language and in determining the jurisdiction and authority of federal

trial judge did not err in refusing to consider that Act in this case.

As noted previously, the injunction was granted by the trial judge because the alleged grievance herein was not handled in accordance with mandatory provisions of the Railway Labor Act nor in accordance with the agreement in existence between the carrier and its employees. As found by the trial judge, at all times material hereto the appellee was a "carrier", the appellants were either "employees" or "representatives" and all parties were engaged in "commerce" as these terms are defined in the Railway Labor Act at 45 U.S.C.A. § 151. This being so, all parties were held to be subject to the provisions of that Act, and this is not now debated by the parties on this appeal. Under the Railway Labor Act a "dispute" can be classified as either "major" or "minor". Generally speaking, "major disputes" arise under 45 U.S.C.A. § 152 Seventh and, as stated by the Supreme Court in Elgin, Joliet & Eastern Ry. v. Burley, 1945, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886, aff'd on rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928, they relate

> " * * * to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing

agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past."

A "minor dispute", on the other hand, is defined by the Railway Labor Act, at 45 U.S.C.A. § 152 Sixth, to be

> " * * * a dispute between a carrier or carriers and its or their employees, arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * *."

As stated by the Supreme Court in the Burley case, supra, at page 723 of 325 U.S., at page 1290 of 65 S.Ct., a "minor dispute"

> " * * * contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one."

The key practical difference between a "major dispute" and a "minor dispute" under the Railway Labor Act concerns the method of settlement of each. As stated by this court in International Ass'n of Machinists, AFL–CIO v. Northwest Airlines, Inc., 8 Cir., 1962, 304 F.2d 206, 209–210 (hereafter Northwest Airlines case):

> " * * * Major disputes are to be settled only by processes of *non-*

courts; it is one of freedom of association, organization, representation and negotiation on the part of workers. The hearings and committee reports reveal that Congress attempted to write its bill in unmistakable language because it believed previous measures looking toward the same policy against nonjudicial intervention in labor disputes had been given unduly limited constructions by the courts."
Accord: Sinclair Refining Co. v. Atkinson, 1962, 370 U.S. 195, 199–203, 82 S.Ct. 1328, 8 L.Ed.2d 440; Marine Cooks & Stewards, AFL v. Panama Steamship Co., Ltd., 1960, 362 U.S. 365, 369, 80 S.Ct. 779, 4 L.Ed.2d 797, rehearing denied, 363 U.S. 809, 80 S.Ct. 1235, 4 L.Ed.2d 1151. In point of fact, the courts have defined

the term labor dispute as used in the Norris-LaGuardia Act very broadly. See, e.g., Marine Cooks & Stewards, AFL v. Panama Steamship Co., Ltd., supra (picketing by American seamen of foreign vessels in American waters in protest over substandard wages of seamen on foreign vessel); In re Third Avenue Transit Corp., 2 Cir., 1951, 192 F.2d 971 (union demand for reduced work week at no loss in pay in abridgement of union obligations under existing agreement); United States v. American Federation of Musicians, N.D.Ill.E.D., 1942, 47 F.Supp. 304, aff'd per curiam, 318 U.S. 741, 63 S.Ct. 665, 87 L.Ed. 1120 (1943) (refusal of union and its members to broadcast for station employing non-union musicians).

*compulsory* adjustment through mediation and conciliation. * * *

* * * * * *

"The Railway Labor Act contemplates *compulsory* arbitration of minor disputes. * * *" (Emphasis supplied.)

In the case of either a "major" or a "minor" dispute, negotiation is contemplated as a first step toward settlement. However, if negotiation fails to provide a solution for a "minor dispute", the Railway Labor Act, 45 U.S.C.A. § 153 First (i) (set out in full at f.n. 2, supra) requires that upon request by one of the parties the dispute be submitted to the National Railroad Adjustment Board for binding arbitration.

The parties to this appeal, although differing in opinion as to what dispute is in controversy,[5] do agree that the dispute in controversy is "minor" rather than "major" for purposes of applying the Railway Labor Act. Appellants, however, citing Northwest Airlines, argue:

"The existence of a 'minor dispute' in no way precludes the concurrent existence of a 'labor dispute' [under the Norris-LaGuardia Act]."

We agree. At the same time, however, it is beyond question that both Acts cannot be simultaneously enforced where they conflict with each other. This is not the first occasion where the courts of the United States have had to deal with a situation which could fall under either Act. In Virginian Ry. v. System Federation No. 40, 1937, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, the Supreme Court held that the Norris-LaGuardia Act could not prevent injunctive relief from being granted under § 152 Ninth of the Railway Labor Act (dealing with the identity of bargaining representatives). The court, through Mr. Justice Stone, said at page 563 of 300 U.S., at page 607 of 57 S.Ct.:

"It suffices to say that the Norris-LaGuardia Act can affect the present decree only so far as its provisions are found not to conflict with those of § 2, Ninth, of the Railway Labor Act, authorizing the relief which has been granted. Such provisions cannot be rendered nugatory by the earlier and more general provisions of the Norris-LaGuardia Act. See the Railway Clerks case [Texas & New Orleans R. Co. v. Brotherhood of Railway Clerks], supra, 281 U.S. 548, 571, 50 S.Ct. 427, 74 L.Ed. 1034; cf. Callahan v. United States, 285 U.S. 515, 518 [52 S.Ct. 454, 455, 76 L.Ed. 914]; [City of] Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 22 [19 S.Ct. 77, 43 L.Ed. 341]; International Alliance, etc. v. Rex Theatre Corp., 7 Cir., 73 F.2d 92, 93."

In Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. R., 1957, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, rehearing denied, 353 U.S. 948, 77 S.Ct. 823, 1 L.Ed.2d 857, (hereafter the Chicago River case), the Supreme Court held that a railway labor organization could

5. Appellants contend that the dispute in controversy involves the suspension of Jones, whereas the carrier contends that the dispute involved is the complaint by Jones to Fenton concerning the treatment of Nash. We suggest that both of these incidents, though one probably arose because of the other, might give rise to disputes or grievances within the meaning of the Railway Labor Act.

If this court were to accept the carrier's contention only, there would arguably be no labor dispute within the meaning of the Norris-LaGuardia Act (thus further supporting the trial judge's decision that the Norris-LaGuardia Act is inapplicable to this case) since conceivably no "dispute" would exist until or unless Nash or his representative, Jones, entered a formal complaint pursuant to Rule 32 of the agreement between the carrier and the appellants (set out at f.n. 1, supra). The trial judge found from the evidence that the Nash grievance

"* * * was not handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes, contrary to the provisions of the Railway Labor Act and contrary to Rules 32 and 33 of the [carrier-employee] Agreement * * *."

not resort to a strike over "minor disputes" pending before the National Railroad Adjustment Board and that any such illegal strike could be enjoined by the District Court. Notwithstanding the Norris-LaGuardia Act, the union could not resort to self-help once compulsory arbitration of a "minor dispute" was in progress. The Supreme Court, through Mr. Chief Justice Warren, stated at pages 40 and 41 of 353 U.S., at pages 640 and 641 of 77 S.Ct.:

"We hold that the Norris-LaGuardia Act cannot be read alone in matters dealing with railway labor disputes. There must be an accommodation of that statute and the Railway Labor Act so that the obvious purpose in the enactment of each is preserved. We think that the purposes of these Acts are reconcilable.

"In adopting the Railway Labor Act, Congress endeavored to bring about stable relationships between labor and management in this most important national industry. It found from the experience between 1926 and 1934 that the failure of voluntary machinery to resolve a large number of minor disputes called for a strengthening of the Act to provide an effective agency, in which both sides participated, for the final adjustment of such controversies. Accumulation of these disputes had resulted in the aggregate being serious enough to threaten disruption of transportation. Hence, with the full consent of the brotherhoods, the 1934 amendment became law.

"The Norris-LaGuardia Act, on the other hand, was designed primarily to protect working men in the exercise of organized, economic power, which is vital to collective bargaining. The Act aimed to correct existing abuses of the injunctive remedy in labor disputes. Federal courts had been drawn into the field under the guise either of enforcing federal statutes, principally the Sherman Act, or through diversity of citizenship jurisdiction. In the latter cases, the courts employed principles of federal law frequently at variance with the concept of labor law in the States where they sat. Congress acted to prevent the injunctions of the federal courts from upsetting the natural interplay of the competing economic forces of labor and capital. Rep. LaGuardia, during the floor debates on the 1932 Act, recognized that the machinery of the Railway Labor Act channeled these economic forces, in matters dealing with railway labor, into special processes intended to compromise them. Such controversies, therefore, are not the same as those in which the injunction strips labor of its primary weapon without substituting any reasonable alternative.

"In prior cases involving railway labor disputes, this Court has authorized the use of injunctive relief to vindicate the processes of the Railway Labor Act. Virginian R. Co. v. System Federation No. 40, 300 U.S. 515 [57 S.Ct. 592, 81 L.Ed. 789] * * *."

See, also, Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; Graham v. Brotherhood of L. F. & E., 1949, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22; Tunstall v. Brotherhood of L. F. & E., 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Steele v. Louisville & N. R. R., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173.

This court complied with the Chicago River case in Missouri-Illinois R. R. v. Order of Railway Conductors and Brakemen, 8 Cir., 1963, 322 F.2d 793. In that case, although the court found a "major dispute" rather than a "minor dispute" existed thus defeating injunctive relief, it was said at page 796 of 322 F.2d:

"Where minor disputes are concerned, if the initial conference between the parties fails, either party may submit the controversy to the National Railroad Adjustment Board. The decision of this Board

is final and binding upon the parties. (45 U.S.C.A. § 153(i), (l), (m), (n)). Neither party, where a minor dispute is in issue, may resort to self-help. *Thus, a court has the power to enjoin a strike, notwithstanding the Norris-LaGuardia Act, thereby effectuating the Adjustment Board's jurisdiction and its conclusions as to the dispute.* Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937)." (Emphasis supplied.)

 Although appellants did not do so, one could attempt to distinguish the Chicago River case on the grounds that the "minor dispute" therein involved had been submitted to the National Railroad Adjustment Board for compulsory arbitration. The court in Chicago River, supra, stated at page 39 of 353 U.S., at page 640 of 77 S.Ct., " * * * federal courts can compel compliance with the provisions of the [Railway Labor] Act to the extent of enjoining a union from striking to defeat the jurisdiction of the Adjustment Board." See Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. R., 1960, 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379, rehearing denied, 364 U.S. 854, 81 S.Ct. 31, 5 L.Ed. 2d 78; Manion v. Kansas City Terminal R. R., 1957, 353 U.S. 927, 77 S.Ct. 706, 1 L.Ed.2d 722, reversing per curiam, Mo. App., 297 S.W.2d 31. In other words, the argument would be that unless or until a minor dispute involved is submitted to the jurisdiction of the National

Railroad Adjustment Board,[6] there is no valid reason to issue an injunction in disregard of applicable sections of the Norris-LaGuardia Act. § 8 of that Act, 29 U.S.C.A. § 108, requires that

"No restraining order or injunctive relief shall be granted to any complainant * * * who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

This section would prevail in the absence of a showing that the more specific Railway Labor Act controlled in the matter. See the Northwest Airlines case, supra. Although the Railway Labor Act has a strong policy of requiring compulsory arbitration in a "minor labor dispute", such policy providing a justification for issuing an injunction to prevent one side or the other from resorting to illegal self-help, the argument here is, simply, that the policy underlying the Railway Labor Act cannot come into play to defeat the anti-injunction provisions of the Norris-LaGuardia Act until the dispute is referred to the National Railroad Adjustment Board as provided for under the Railway Labor Act. Such referral has not taken place in the instant case.

 In answer to the foregoing argument, it is clear that in the instant case, at the time of the illegal and unauthorized strike,[7] the carrier had made "every reasonable effort"[8] to settle the dispute involved, even though the dispute had not yet gone before the Adjustment Board. Accepting appellants' contention that the relevant dispute is the one concerning the suspension of

---

6. As noted in the Chicago River case at f.n. 22 at page 41 of 353 U.S., at page 641 of 77 S.Ct.:

"The Adjustment Board cannot entertain a case on its own motion. Its processes must be invoked by one or both of the parties. In this case, the River Road filed the grievances with the Board before seeking an injunction. Cf. the exhaustion of remedies provision in § 8 of the Norris-LaGuardia Act. 29 U.S.C. § 108."

7. The strike was illegal in light of Rule 33 of the carrier-employee agreement set out at f.n. 1, supra.

8. Thus even if the Norris-LaGuardia Act were held to apply in this case, it is arguable that at least the requirements of § 8 of that Act had been met by the carrier.

Jones (see f.n. 5, supra), it appears that in suspending Jones the carrier was acting in accord with Rule 35 of the carrier-employee agreement which provides:

"No employe will be discharged for any cause without first being given an investigation.

"In extreme cases, suspension pending a hearing, which shall be prompt, shall not be deemed a violation of this rule.

"If it is found that charges are not sustained, such employe shall be returned to service and paid for all regular time lost."

As noted by the trial judge, "Powers suspended Jones from service pending a hearing pursuant to the provisions of Rule 35 * * *." The illegal strike took place prior to the said hearing. In light of the carrier-employee agreement, it would have been unlikely and unnatural for the carrier to have formally submitted the dispute to the Adjustment Board for binding arbitration. There would have been time enough for that if and when the hearing and subsequent investigation proved unsuccessful. In other words, we believe that by honoring the carrier-employee agreement prior to any need for binding arbitration, the carrier was acting within the purview of the Railway Labor Act where it provides, at 45 U.S.C.A. § 153 First, (i) that grievances

"* * * *shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred * * * to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."* (Emphasis supplied.)

The carrier had started necessary proceedings under the Railway Labor Act by scheduling a hearing and investigation. This was a prelude to invoking jurisdiction of the Adjustment Board. It could reasonably have done no more with the particular dispute involved in this appeal until such time as the hearing and investigation had taken place and until a full statement of the facts and all supporting data had been prepared. Since the policies of the National Railway Labor Act concerning a "minor dispute" were applicable in this case, it makes no sense to say that there could not be an injunction to protect the jurisdiction of the Adjustment Board just because a formal referral had not been made to it. It could have been made in due course.[9] The carrier had done all that was re-

9. Arguably, the company or union would have had no alternative except to have proceeded to compulsory arbitration before the Adjustment Board if and when the "dispute" could not have been settled by the parties themselves within the terms of the carrier-employee agreement. Cf., Order of Railway Conductors of America v. Southern Ry., 1950, 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811; Slocum v. Delaware, L. & W. R. R., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. The Southern Ry. case involved a dispute between a railroad and a labor union concerning the railroad's obligation under an existing collective bargaining agreement to give conductors extra pay for certain services. The railroad refused the union's demand and commenced a declaratory judgment action in a state court. Thereafter the union sought to resolve the dispute before the National Railroad Adjustment Board. In holding that the state court was without power to interpret the terms of the agreement and adjudicate the dispute, the Supreme Court stated at pages 256–257 of 339 U.S., at page 586 of 70 S.Ct.:

"* * * After the railroad had sued in the state court, the union filed a petition for hearing and award before the Adjustment Board. The state court nevertheless proceeded to adjudicate the dispute. Sustaining the state court's action would invite races of diligence whenever a carrier or union preferred one forum to the other. And if a carrier or a union could choose a court instead of the Board, the other party would be deprived of the privilege conferred by § 3 First (i) of the Railway Labor Act, 48 Stat. 1191, 45 U.S.C. § 153 First (i), which provides that after negotiations have failed 'either

quired of it. As stated in Northwest Airlines at page 211 of 304 F.2d:

> " * * * The overriding purpose of the Railway Labor Act is that minor disputes in the transportation industry be settled by administrative procedures established in the Act without resort by any party to the dispute to self-help. Consequently, an accommodation of the Norris-LaGuardia Act and the Railway Labor Act requires that federal courts have power to enjoin conduct which would render nugatory the administrative process established by the Railway Labor Act." (Emphasis supplied.)

Here the carrier was clearly attempting to follow the procedures required by the Railway Labor Act. This being true, the District Court did not err in preventing the appellants from using self-help which would defeat the purpose of that Act. Cf., Brotherhood of Locomotive Engineers v. Louisville & N. R. R., 1963, 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172. Unlike the situation in Northwest Airlines the carrier herein was not attempting to avoid the use of Railway Labor Act procedures.

■ Thus, even though the dispute herein may be a "labor dispute" within the meaning of the Norris-LaGuardia Act, it is also a "minor dispute" within the meaning of the Railway Labor Act. Since there is a conflict between these two Acts concerning the issuance of an injunction, the more specific and later-enacted Railway Labor Act must prevail to allow the issuance of the injunction.

■ Other contentions of the appellants are more readily resolved. They contend that even if the carrier is entitled to an injunction to prevent the illegal strike, the procedural protections of §§ 7 and 9 of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 107, 109, set out in f.n.

3, supra, must be followed since those sections are intended to apply to all situations where §§ 4 and 5 of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 104, 105, do not prohibit the issuance of an injunction entirely. Otherwise, appellants contend, §§ 7 and 9 are, in effect, nugatory. The short and obvious answer to this contention, in light of authorities previously cited, is that §§ 7 and 9 still fully apply except where limited or modified by provisions or policies of a more recent and specific act, such as the Railway Labor Act.

Certain cases cited by appellants are inapposite to the situation involved on this appeal. Order of Railroad Telegraphers v. Chicago & N. W. Ry., 1960, 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774, rehearing denied, 362 U.S. 984, 80 S.Ct. 1056, 4 L.Ed.2d 1019; Brotherhood of Railroad Trainmen v. Toledo, P. & W. R. R., 1944, 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534; and Chicago, R. I. & P. R. R. v. Switchmen's Union, 2 Cir., 1961, 292 F.2d 61, certiorari denied, 370 U.S. 936, 82 S.Ct. 1578, 8 L.Ed.2d 806, all held no injunction could issue in violation of the Norris-LaGuardia Act but all of these cases are distinguishable since they all involved "major" rather than "minor" disputes under the Railway Labor Act. As previously discussed, the Railway Labor Act contemplates non-compulsory adjustment of "major disputes", whereas compulsory arbitration is contemplated for "minor disputes". This being so, it is readily apparent that injunctive relief would not be appropriate in a case of a "major dispute" where self-help is encouraged. Such is not the situation with a "minor dispute". The Toledo, P. & W. R. R. case is further distinguishable in that there the carrier refused to submit a labor dispute to arbitration, which was clearly not making a reasonable effort to settle the dispute. This was not true in the instant case. The case of In-

party' may refer the dispute to the appropriate division of the Adjustment Board."
This language would seem to support our conclusion that, under the Railway

Labor Act, an injunction could issue to preserve even the possible future jurisdiction of the Adjustment Board.

ternational Ass'n of Bridge, Structural & Sign Ornamental Iron Workers v. Pauly Jail Bldg. Co., 8 Cir., 1941, 118 F.2d 615, certiorari denied, 314 U.S. 639, 62 S.Ct. 75, 86 L.Ed. 513, did not involve the Railway Labor Act.

Appellants contend that even if the Norris-LaGuardia Act does not apply in this case,

"The District Court erred in entering a permanent injunction without complying with the requirements of Rule 65(b) of the Federal Rules of Civil Procedure."

In pertinent part, Rule 65(b) Federal Rules of Civil Procedure, 28 U.S.C.A., provides:

"(b) Temporary Restraining Order; Notice; Hearing; Duration.

" * * * Every temporary restraining order granted without notice * * * shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. * * * In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order."

It is appellants' position that the hearing which began on December 18, 1964, aside from dealing with the contempt charge, was set up only to determine whether the temporary restraining order was to be converted into a preliminary injunction. They assert that the District Court erred in deciding to issue a permanent injunction rather than a preliminary injunction without any prior warning or notice to appellants.

We disagree with appellants' contentions, both as to the law and as to any prejudice suffered by them through the issuance of a permanent injunction at the hearing. Rule 65(b) in no way deals with the issuance of a permanent injunction. It does not prohibit the issuance of a permanent injunction in a hearing on a motion for a preliminary injunction. In fact, a proposed amendment to the Rules of Civil Procedure would sanction the type of practice that was followed in the instant case. As stated in the March 1964 Preliminary Draft of Proposed Amendments to the Rules of Civil Procedure, where it proposes to add subdivision (2) to Rule 65 (a), Federal Rules of Civil Procedure, 28 U.S.C.A.:

"Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial, and, as far as feasible, shall not be repeated upon the trial. This subdivision (a) (2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury." (As set out in Barron and Holtzoff, Federal Practice and Procedure (1964 Supp. at 214–215).)

Although this is only a proposed amendment to the Federal Rules, an advisory committee note to this proposed amendment states that it " * * * is believed to reflect the substance of the best current practice and introduces no novel conception." See Barron and Holtzoff, Federal Practice and Procedure (1964 Supp. at 215).

As a factual matter, there would appear to be no prejudice to appellants from the issuance of the permanent injunction at the hearing. In the temporary restraining order, notice and order to show cause, entered on December 9, 1964, and served the following day, appellants were notified:

"It Is Further Ordered that defendants, and each of them, appear before this Court in the City of Davenport, Iowa, on December 18, 1964, at 11 o'clock A. M., Central Standard Time, and show cause, if any they have, as to why this restraining order should not be continued *or made permanent* in accordance with the prayer of the complaint heretofore filed." (Emphasis supplied.)

On the first day of the hearing the court stated:

"The matter assigned for hearing at 11 o'clock this morning is a matter of whether or not the temporary restraining order which has been issued by this Court *should be made permanent.*" (Emphasis supplied.)

The following objection was raised by Mr. Jones, as counsel for appellants, during the course of the hearing:

"Mr. Jones: Your Honor, I'm going to object to that question. *It is my position that this is a hearing to determine whether the injunction should be made permanent* and that the only matters [sic] that should be placed in issue here is whether the present circumstances at this plant require the Court to make this order permanent, and that the only matters that should be put into evidence here are those matters which relate to the present situation which would form the basis of the necessity for a permanent injunction." (Emphasis supplied.)

The following took place at the close of the hearing:

"The Court: Well, then, the temporary restraining order will remain in effect until December 28th, which is a week from next Monday.

And in the meantime *you will place before the Court a permanent injunction.* Is that satisfactory?

"Mr. Jones: Yes.

"The Court: Then the temporary restraining order will continue for a period of ten days. In the meantime *a permanent injunction order will be submitted to the Court.*" (Emphasis supplied.)

In fact, then, appellants were certainly not without "prior warning or notice" at the time the permanent injunction was issued. It is evident from the excerpts set out above that they expected a permanent injunction would issue from the hearing.

Additionally, the following excerpt from the record indicates that there was also no prejudice to appellants in consolidating the contempt and injunction proceedings:

"The Court: * * * Now, let me ask you this question. Of course, at 1 o'clock we had set this order to show cause hearing. As far as counsel are concerned, are these two matters [the contempt and injunction issues] consolidated as far as the hearing is concerned? There is no reason why we should disassociate one from the other, is there?

"Mr. Davis: I see no reason, your Honor, why they cannot be consolidated. The testimony, to a large extent, is the same in both.

"Mr. Jones: I have no objection to that, your Honor.

"The Court: Well, then, we will just consider that we are having both hearings. You are representing the defendants in both matters, are you not?

"Mr. Jones: Yes, I am, your Honor."

Appellants cite Tanner Motor Livery, Ltd. v. Avis, Inc., 9 Cir., 1963, 316 F.2d 804, certiorari denied, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55, and Standard Oil Co. of Texas v. Lopeno Gas Co., 5 Cir., 1957, 240 F.2d 504, as authority for

the proposition that a permanent injunction cannot ordinarily be granted on the hearing of an application for a temporary injunction. In the former case, it is stated at pages 808–809 of 316 F.2d:

> "1. It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the *status quo ante litem* [emphasis by the court] pending a determination of the action on the merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial. *This is particularly true where the relief afforded, rather than preserving the status quo, completely changes it. Yet this is what Judge Clarke's order does, and it is based upon findings that purport to determine that Tanner breached the contracts, that its breaches could not be cured, and that Tanner has no substantial defense to the action.* These are matters to be determined at trial, not upon the motion for preliminary injunction.
>
> \* \* \* \* \* \*
>
> "We are not to be understood as stating that the foregoing principles are hard and fast rules, to be rigidly applied to every case regardless of its peculiar facts." (Emphasis supplied.)

The instant injunction certainly does not change the status quo of the parties, nor does it in any way destroy any defenses available to appellants, who freely admit that

> " \* \* \* The Carrier is entitled to an injunction to prevent the illegal strike; \* \* \*."

even though' they feel such injunction should have been issued in accordance with the Norris-LaGuardia Act. The hearing herein was not a trial on the merits of the action upon affidavits only. The issuance of the permanent injunction in no way harmed appellants on the

contempt issue, which is still pending in the District Court. Appellants have lost no rights by the issuance of a permanent injunction.

The Standard Oil Co. of Texas case, supra, is even less in favor of appellants since there the court upheld a permanent injunction granted in a hearing on an application for a temporary injunction. That court stated at pages 509–510 of 240 F.2d:

> "It goes without saying that *ordinarily* [emphasis by the court] a permanent injunction cannot be granted on the hearing of an application for a temporary injunction. But is that true in this case? *There appear to be no material issues of fact. The dispute centers entirely about the validity and construction of a written contract. The district court decided those disputed questions of law, and, as we have indicated, it decided them correctly. Nothing more remained to be tried. Under such circumstances, a reversal would be a useless formality."*
(Emphasis supplied.)

Similarly, in the instant case there are no material issues of fact in controversy that remain to be tried, except as concerns the now separate contempt proceeding, and the dispute is concerned only with the validity of the injunction in light of the adjudicated facts and present law. Appellants are now able to appeal those questions of law and they are not prejudiced by the issuance of a permanent injunction.

Although the trial court had the power to issue a permanent injunction herein, we are in accord with appellants' final contention that:

> "The broad and far-reaching injunction in futuro granted by the District Court exceeded the equity powers of the Court."

The injunction provides that appellants be permanently enjoined and restrained from:

> "1. Calling, ordering, authorizing, encouraging, inducing, approv-

ing, continuing or permitting any work stoppage on plaintiff's [appellee's] railroad.

"2. Picketing or bannering any of the premises on which plaintiff conducts its railroad operations.

"3. Interfering with ingress to or egress from said premises.

"4. Interfering in any manner with the delivery, loading, unloading, dispatch or movement of any of plaintiff's rolling stock, engines, cars, equipment or trains or any of the contents thereof.

"5. In any manner interfering with or inducing or endeavoring to induce any person employed by the plaintiff from performing his work and duties and from in any manner endeavoring to induce any such employee to desist therefrom in whole or in part."

By its terms the injunction goes far beyond enjoining just the conduct of the minor dispute giving rise to it and thus is in violation of traditional concepts of judicial restraint in equity matters. As stated by the Supreme Court in N. L. R. B. v. Express Publishing Co., 1941, 312 U.S. 426, 435–437, 61 S.Ct. 693, 699–700, 85 L.Ed. 930:

"A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past. But the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged. This Court will strike from an injunction decree restraints upon the commission of unlawful acts which are thus dissociated from those which a defendant has committed. Swift & Co. v. United States, 196 U.S. 375 [25 S.Ct. 276, 49 L.Ed. 518]; New York, N. H. & H. R. Co. v. Interstate Commerce Comm'n, 200 U.S. 361, 404 [26 S.Ct. 272, 282, 50 L.Ed. 515] and see under the National Labor Relations Act, National Labor Relations Board v. Swift & Co., [7 Cir.,] 108 F.2d 988.

\* \* \* \* \* \*

" \* \* \* the injunction of a court \* \* \* must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity or relation to those unlawful acts which the \* \* \* [Court] has found to have been committed by the employer in the past. See United States v. Trans-Missouri Freight Association, 166 U.S. 290, 308, 309 [17 S.Ct. 540, 546, 41 L.Ed. 1007]; Standard Oil Co. [of New Jersey] v. United States, 221 U.S. 1, 77 [31 S. Ct. 502, 522, 55 L.Ed. 619]; Texas & New Orleans R. Co. v. Brotherhood of Railway [& S. S.] Clerks, 281 U. S. 548 [50 S.Ct. 427, 74 L.Ed. 1034]; Local 167, etc. v. United States, 291 U.S. 293 [54 S.Ct. 396, 78 L.Ed. 804]; Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 541, 543, 544 [57 S.Ct. 592, 596, 597, 81 L.Ed. 789]."

See, also, Champion Spark Plug Co. v. Reich, 8 Cir., 1941, 121 F.2d 769, 772, certiorari denied, 314 U.S. 669, 62 S.Ct. 130, 86 L.Ed. 535. Of course, no statute is involved in the instant case but the principle is the same. The injunction cannot force appellants to do more than is required of them in their existing agreement with the carrier and under current law. The broad language of the injunction could effectively prevent appellants from ever exercising any self-help, no matter how legitimate it was, in any type of bargaining relationship between the carrier and its employees.

The contention of the carrier that,

"* * * A plain reading of the Findings of Fact, Conclusions of Law and Order shows that the injunction is directed to specific conduct at a specific place and time to alleviate a specific evil"

does not carry much weight in view of the actual language of the injunction which apparently was drafted in the first instance by the carrier.

This case will be remanded with instructions to modify the injunction in accordance with this opinion to cover only minor disputes that may arise under the Railway Labor Act out of courses of conduct similar to that involved herein. In all other matters the decision of the trial court will be affirmed.