## CORICA v. RAGEN et al.
### No. 8477.

Circuit Court of Appeals, Seventh Circuit.
Feb. 15, 1944.

Floyd E. Thompson, of Chicago, Ill., for appellants.

Daniel M. Healy, of Chicago, Ill., Geo. D. Locke, of Phoenix, Ariz., and Harry E. Kopald, of Chicago, Ill., for appellee.

Before EVANS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from an order granting plaintiff a preliminary injunction.

Jurisdiction, which rests upon diversity of citizenship and the requisite amount in controversy, is not in dispute.

Plaintiff's complaint alleges that plaintiff is conducting a business of selling news of sporting events under the name of "Washoe Publishing Co." and that defendants are conducting a business of gathering and distributing sporting news under the name of "Continental Press Service"; that plaintiff employed Continental Press to gather news in the eastern part of the United States for distribution to his customers; that in July, 1943, agents of Continental Press approached plaintiff's customers, represented to them that the news being distributed to them was being distributed by Continental Press and not by plaintiff, and that they should no longer pay plaintiff for such news; that as a consequence of such representations, customers have refused to

pay plaintiff for the news distributed to them; that by said acts, defendants have injured plaintiff in his business and unless restrained will destroy his business; and that plaintiff therefore prays for an injunction, damages, and an accounting.

Another important phase of the complaint, which is not directly in issue on this appeal, was that in which plaintiff sought a preliminary injunction against Western Union Telegraph Company, alleging that plaintiff was the lessee of a Morse circuit of Western Union originating at St. Louis and terminating in various cities in the Rocky Mountain and Pacific Coast States where plaintiff's customers were located. On the basis of averments in the defendants' answer, supporting affidavits, and arguments, the District Court denied this injunction, finding that plaintiff's contract with Western Union was properly terminated in August, 1942. Several affidavits and an exhibit of the contract between Western Union and Continental Press, offered by defendants, show that the telegraph facilities in question were leased to Continental Press in 1942.

Defendants filed a joint and several answer in which they allege that whatever news service plaintiff has rendered to customers since August 12, 1942, has been pursuant to an arrangement under which he purchased news from Continental Press Service and under which Continental delivered the news to the subscribers for such service; that Continental sells news to distributors located in various parts of the United States pursuant to oral contracts entered into between Continental and such distributors, said contracts being for three-month periods, the amounts thereof being determined at or about the commencement of each contract period; that in January, 1941, and from time to time thereafter, plaintiff entered into a contract with Continental whereby it sold news to him for distribution by him to subscribers in the Rocky Mountain and Pacific Coast States; that for the period beginning in April, 1943, plaintiff paid to Continental the sum of $3,-500 a week; that upon the expiration of the contract for this period, on or about July 3, 1943, Continental advised plaintiff that the charge would be $5,500 a week for the next three-month period and plaintiff continued to accept such service; that for the next two weeks plaintiff failed to pay for the service; that on July 15, 1943, and again on July 20, plaintiff notified Continental that he would not pay for the service; that Continental thereupon discontinued service to plaintiff, and on or about July 20, 1943, entered into an agreement with one Edward Maloney whereby Continental agreed to sell sporting news gathered by it to Edward Maloney at $5,500 a week and to deliver such news to customers of Maloney in the Rocky Mountain and Pacific Coast States.

Plaintiff filed an affidavit in support of his application for an injunction in which he said that he began to distribute news in the western part of the United States in 1939; that he had expended large sums in perfecting an organization for gathering such news and that he employed Continental Press Service to gather news east of the Mississippi; that he controlled the telegraph facilities till July 13, 1943, and that the change of the lease from him to Continental Press in August, 1942, was simply for billing convenience; that Edward Maloney, to whom Continental directed the customers to account, was his former employee; that Maloney is furnishing Continental Press Service news to affiant's customers and has no customers of his own; and that the increased charge for the news ($5,500 in place of the former $3,500 a week) was unjustified.

James M. Ragen, Jr., filed his affidavit in opposition to the application in which he stated that plaintiff did not commence the operation of a news distribution business in 1939, but that plaintiff was assigned as a distributor of Continental Press Service in May, 1940; that the news plaintiff gathered was at the request and under the direction, and at the expense of Continental Press Service; that plaintiff has not spent money in developing the news distributing business, but took over an established business when he was appointed distributor and continued to sell news to the same customers to whom his predecessor had sold; that the increased charge was justified because it depended upon the season when the service was furnished, the amount of news that was available, the cost of gathering the news, and the demand for the service; that Maloney was familiar with the territory and had long had contact with most of the subscribers for the service through his employment with another distributor of sporting news in the territory; that Maloney was paying $5,500 per week for the news; and that plaintiff at all times had full knowledge of the fact that the

affiant had complete control of the telegraph facilities after August 12, 1942.

The fact that plaintiff refused to pay the price defendants asked for Continental Press Service news in July, 1943, is established by the affidavits of other witnesses produced by defendants. Plaintiff submitted no proof, by affidavit or otherwise, that he had offered to pay for this service or that he paid anything for the service during the two weeks prior to July 20, 1943.

After a hearing on the pleadings and the affidavits in support of and in opposition to the application for the injunction, the District Court concluded that " * * * the Continental Press has improperly interfered with the plaintiff's business and customers and should be restrained from further conduct of that nature." It was then decreed that the defendants and their agents and attorneys "be and they hereby are enjoined and restrained until the further order of this court from interfering with plaintiff's business and customers and from approaching or causing to be approached the customers of plaintiff; and from in any manner or by any means furnishing or attempting to furnish news to plaintiff's customers; from in any manner interfering with the plaintiff's distribution of news to his customers; from intimidating or persuading plaintiff's customers to cease doing business with the plaintiff; from notifying plaintiff's customers that they should no longer deal with plaintiff; from notifying plaintiff's customers that if they did deal with plaintiff, they would be deprived of all news service; from notifying plaintiff's customers to cease making any payments to plaintiff; from directing or persuading plaintiff's customers not to pay any moneys to plaintiff for news service heretofore or hereafter furnished to them by the plaintiff; from collecting from plaintiff's customers any sums of money or other things from the furnishing of news service; from notifying or telling plaintiff's customers that unless all payments are made direct to said defendants individually or under the name of Continental Press, all distribution of news will be shut off, and that such customers will be deprived thereof; from representing to plaintiff's customers that all of the business of plaintiff has been taken over by said defendants individually or under the name of Continental Press and from notifying plaintiff's customers that they will be served by Continental Press and not by plaintiff; and from serving or attempting to serve plaintiff's customers in said territory with news of any sort whatsoever, and from doing any other act or thing which would interfere with plaintiff's customers and business."

This injunctional order, which was entered September 28, 1943 and reinstated[1] November 24, 1943, is now before us and our problem is to ascertain whether it was proper for the District Court to issue such an order.

In essence, what plaintiff seeks to accomplish by the injunction, is not to maintain the status quo, but rather to coerce defendants into giving him an exclusive franchise to use Continental Press Service as a means of controlling the business of subscribers for its service in the Rocky Mountain and Pacific Coast States.

In our freely competitive economy, there is no vested and indefeasible right to monopolize customers. Yet plaintiff asserts that the purchasers of this news service are his customers and seeks to exclude defendants from selling to them. Customers cannot be owned as plaintiff seeks to own them. Although plaintiff alleges that he had existing contracts with customers, he sets forth no contracts and furnishes no affidavit of a customer. Thus his naked allegation of existing contracts stands wholly unsupported. When those he claims were his customers were consulted in September, 1943, they replied that they wanted Continental Press Service news service continued and that the arrangements with the then distributor were satisfactory. There is no proof that plaintiff

---

1 On October 16, 1943, it was stipulated by the parties that the order for temporary injunction be vacated without prejudice to the rights of the parties. Pursuant to this stipulation an order was entered vacating the order of September 28, 1943. A pendente lite agreement had been entered into, under which the parties were operating at the time of the vacation of the order. But negotiations failed to result in a final determination or settlement, so plaintiff filed an application to reinstate the order of injunction of September 28, 1943. Defendants filed an answer thereto. Plaintiff made a reply by affidavit to the answer. A hearing was had, and at the conclusion thereof, the District Court ordered the reinstatement.

ever had a contract with a customer, except his uncorroborated statement, and the facts in the record seem to indicate that the most he could have had were parol contracts terminable at will.

These customers were interested in buying Continental Press news service, and there is nothing to show that they would be satisfied with any other news service. They were buying Continental Press service before plaintiff was appointed distributor by Continental in 1940, and when plaintiff's appointment as distributor was terminated, they stated that they wanted to continue to receive Continental Press Service from the new distributor.

Since these customers were buying Continental news service, it seems clear that when plaintiff no longer had that service to sell, they ceased to be his customers. By refusing to pay for Continental service, plaintiff by his own conduct terminated whatever contracts he had with those who had been his customers. This is not to say that plaintiff may not make every effort to sell these customers some substitute for Continental service, but it seems clear that Continental's agents may make a similar effort to sell Continental service to these customers.

Thus the order is defective because it is too broad and sweeping. It enjoins defendants "from in any manner or by any means furnishing or attempting to furnish news to plaintiff's customers" and "from serving or attempting to serve plaintiff's customers in said territory with news of any sort whatsoever," without identifying the customers whom Continental is prohibited from serving, or describing the news Continental is barred from furnishing, or limiting the restraint to unlawful acts of defendants. Without indicating what defendants may do in carrying on their normal business operations, the injunction prohibits them from doing acts which are usual and necessary in the business of gathering, editing, and distributing news. If plaintiff has other news to furnish to his customers and these customers are willing to take the other news, then plaintiff is not deprived of rights by defendants' attempt to sell to the same customers. If plaintiff does not have other news to sell to these customers and

refuses to buy the news of Continental on its terms, these customers cannot be deprived of news essential to their business simply because plaintiff has placed himself in a position where he cannot serve them.

A court of equity must exercise its discretion in such manner as to safeguard the interests of both parties, and, in certain circumstances, such as those in the instant case, it is an abuse of judicial discretion to issue an injunction which permits one party to obtain an advantage by acting, while the hands of the adverse party are tied by the writ. See Spring Valley Water Co. v. San Francisco, C. C., 165 F. 667, 709, 710. Thus, as the Supreme Court said in Russell v. Farley, 105 U.S. 433, 438, 26 L. Ed. 1060, a court of chancery should " * * * regard the comparative injury which would be sustained by the defendant, if an injunction were granted, and by the complainant, if it were refused. * * * And if the legal right is doubtful, either in point of law or of fact, the court is always reluctant to take a course which may result in material injury to either party; * * *." It is apparent from this record that defendants receive more than twenty times as much net income per year as plaintiff from business operations in the territory in question. Moreover, Continental Press has spent thousands of dollars in developing its news service, and its good will must suffer impairment from a serious interruption of service. Thus the hardship inflicted is far greater by allowing the injunction than would be the hardship if there were no injunction. Accordingly, granting it involved a violation of the comparative injury principle.

Taking all the circumstances into consideration, including the fact that the only grounds for granting the injunction were to be found in the unsupported, contradicted and impeached affidavit of plaintiff, we do not think it can be said that plaintiff had established his right to the relief sought so clearly as to be reasonably free from doubt, so as to warrant an injunction prior to trial.

For the foregoing reasons, the preliminary injunction granted by the District Court will be dissolved.

It is so ordered.