275 F.2d 46
 124 U.S.P.Q. 348
 BRUMBY METALS, INC., Plaintiff-Appellee,
v.
William James BARGEN, Minnesota Mining and Manufacturing
Company, Configured Tube Products Company, and
Schoolco, Inc., Defendants. William
James Bargen, Appellant.
 No. 12680.
 United States Court of Appeals Seventh Circuit.
 Feb. 15, 1960.
 
 Robert C. Williams, Casper W. Ooms, Theodore R. Scott, Chicago, Ill., for defendant-appellant, William James Bargen.
 Harold D. Field, Jr., Minneapolis, Minn., Robert A. Hess, Milwaukee, Wis., Benedict Denard, Minneapolis, Minn., for plaintiff-appellee Brumby Metals, Inc. Leonard, Street & Deinard, Minneapolis, Minn., Hess & Chernov, Milwaukee, Wis., of counsel.
 Before SCHNACKENBERG and KNOCH, Circuit Judges, and MERCER, District judge.
 KNOCH, Circuit Judge.
 
 
 1
 Defendant, William James Bargen, has appealed from a prelinary injunction and supplementary mandatory injunctive order entered by the District Court.
 
 
 2
 Plaintiff, a Georgia corporation, sought (1) declaratory judgment determining its rights under a license agreement, (2) restraint of alleged violations of that agreement, (3) damages therefor, and (4) other appropriate relief.
 
 
 3
 The facts as found by the District Court are largely undisputed at this stage in the proceedings. The District Court found that in 1949, defendant Bargen, a resident of Wisconsin, granted exclusive license to U.S. Thermo Control Co. of Minneapolis, Minnesota, to manufacture school furniture from Bargen's unique designs, a number of which were the subject of patents.
 
 
 4
 In 1950, Bargen had replaced this license by another license to Bargen-Built Industries, Inc., a wholly owned subsidiary of U.S. Thermo Control Co., and, in 1951, had, in turn, replaced that license by another to the same subsidiary which changed its name to General School Equipment Company, and which, in turn, with Bargen's consent, assigned the license to plaintiff.
 
 
 5
 Under that license, still in effect, Bargen granted General School Equipment Company (and subsequently plaintiff) exclusive United States rights to manufacture and sell Bargen's designs for fifty years. Royalties were to be paid on unit sales with a guaranteed minimum royalty of $500 per month. General School was given an option to acquire exclusive rights to improvements invented by Bargen without obligation to pay development expenses.
 
 
 6
 The District Court found that, contrary to Bargen's assertions, General School and plaintiff had duly performed all covenants binding on them.
 
 
 7
 Under these successive agreements, Bargen was given the exclusive distributorship in a designated territory for General School and then for plaintiff. The District Court found further that Bargen, beginning in about 1954, had begun to substitute fibreglass for laminated wood in certain items of the Bargen line of furniture, and that General School had exercised its option to use this material. Bargen had fibreglass molds made at Structurlite Plastics Corporation, of Hebron, Ohio, and had arranged for General School to secure its fibreglass from Structurlite.
 
 
 8
 In 1956, contrary to the provisions of the license agreement, Bargen authorized Structurlite to use the same molds to make similar parts for Configured Tube Products Company, of Bellwood, Illinois, and its subsidiary Schoolco, Inc., to sell in competition with General School. Bargen also became a distributor for Configured Tube in the same territory where he had been General School's distributor. This fact remained unknown to General School and to plaintiff until after the transfer of the license and General School's manufacturing assets to plaintiff, when Schoolco advertised items of the Bargen line nationally.
 
 
 9
 On notice from plaintiff, Structurlite ceased fabrication of fibreglass parts for sale to anyone but plaintiff. When another company, on similar notice, also refused to make parts from these molds for sale to anyone other than plaintiff, Bargen transferred the molds to Minnesota Mining and Manufacturing Company, which did fabricate parts for Schoolco and Configured Tube. Bargen subsequently moved the molds to Gisholt Machine Company, in Madison, Wisconsin. The District Court found that, unless enjoined, Bargen would continue to have fibreglass parts made for Schoolco or Configured Tube, which also manufactured certain tables designed by Bargen, which were expressly included in the 1951 license now owned by plaintiff.
 
 
 10
 The injunction, directed to Bargen, his agents, servants, and employees, and all persons acting in concert with him, prohibits (inter alia) inducing or permitting others than plaintiff, to manufacture, etc. in the United States, any school furniture designed by Bargen 'or any other items covered by the license agreement dated October 19, 1951', listing (without limitation) certain specified items, including the tables mentioned above, and items 'in the current sales literature of Schoolco, Inc., or any variation thereof;' and further prohibits 'violating the terms or provisions of the license agreement of October 19, 1951,' and any disposition or use of the molds which are not to be moved from their present location at Gisholt Machine Company.
 
 
 11
 It was Bargen's position that General School Equipment and plaintiff had breached the license agreement in failing to use their best efforts to manufacture and sell the tables. He asserts that an informal arrangement was made where-by he could have these tables manufactured elsewhere and hence he took no steps respecting this breach until this suit was filed and it appeared that, contrary to the informal agreement, plaintiff was still claiming an exclusive license to the tables. Bargen then served notice of cancellation of the license, under a provision in the license whereby plaintiff may prevent such cancellation from taking effect by curing the specified breach within 60 days.
 
 
 12
 A supplemental injunctive order required Bargen to withdraw that notice.
 
 
 13
 Bargen lists the contested issues as follows:
 
 
 14
 '1. In entering an injunctive Order prepared by plaintiff's counsel, may the District Court disregard the plain requirements of Rule 65(d), Federal Rules of Civil Procedure, 28 U.S.C.A., by incorporating other documents by reference and using unspecific general language in defining the proscribed acts?
 
 
 15
 '2. May the District Court enjoin a defendant from his rights to dispose of his personal property in an area in which plaintiff has not asserted rights, either by contract or otherwise, and when such disposition can be accomplished without violating any rights asserted by plaintiff?
 
 
 16
 '3. May the District Court enjoin an aggrieved party to a contract to deny him his right to cancel that contract for a breach which matures after the filing of a suit for interpretation of another part of that contract?'
 
 Rule 65(d) provides:
 
 17
 'Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.'
 
 
 18
 The injunction before us describes the acts sought to be restrained in part through reference to the license agreement of October 19, 1951, and the current sales literature of Schoolco, Inc., neither of which is attached thereto as an exhibit or made a part thereof. Bargen complains that paragraph 1(b) of the injunction order, which reads:
 
 
 19
 '(b) School desks and chairs incorporating a Bargen designed movable offset pedestal, either as offered by plaintiff, or as offered in the current sales literature of Schoolco, Inc., or any variation thereof.'
 
 
 20
 is further defective in that it is unduly vague and general.
 
 
 21
 In our opinion the injunction is not specific in terms and fails to conform to Rule 65(d) in incorporating other documents by reference.
 
 
 22
 Plaintiff contends that Bargen may not now complain of the wording of the injunction because his counsel approved it as to form prior to its submission to the District Court for signature, and that in thus approving the form of the injunction, Bargen waived the objections he now raises. Had he approved the order for injunction without limitation, then we could well agree with plaintiff's contention, for then, in fact, it would be a consent order. Unquestionably, the District Court was misled; for had objections to the substance been raised, the District Court, doubtless, would have corrected the deficiencies immediately. We, however, are not passing upon the conduct of counsel. The fact remains that anyone reading the injunction order cannot ascertain from the four corners of the order itself exactly what conduct was enjoined.
 
 
 23
 We believe that Rule 65(d) is controlling and mandatory under these circumstances, or any other circumstances except by complete agreement of counsel. It is founded on reason and logic. It sets out mandatory provisions which should be respected. In Shannon v. Retail Clerks, International P. Ass'n, 7 Cir., 1942, 128 F.2d 553, 555, Judge Evans, speaking for this Court, said that an order which did not comply with Rule 65(d) was not necessarily void; but that if it were assailed on appeal, it should be set aside for failure to comply with the rule. Schine Chain Theatres v. United States, 1948, 334 U.S. 110, 126, 68 S.Ct. 947, 92 L.Ed. 1245; Mayflower Industries v. Thor Corp., 3 Cir., 1950, 182 F.2d 800.
 
 
 24
 An injunctive order is an extraordinary writ, subject to contempt for failure to comply, and thus must be set out in specific terms.
 
 
 25
 In the light of the history of misuse of the molds, it was a reasonable and proper exercise of the District Court's broad equity powers to restrain disposition of these items. Similarly, in view of the District Court's finding that plaintiff had performed all of its obligations under the license, it was equally proper to direct withdrawal of the notice of cancellation served after the issuance of the preliminary injunction order. Connolly v. Gishwiller, 7 Cir., 1947, 162 F.2d 428, 435.
 
 
 26
 The District Court's preliminary injunction order of March 20, 1959, is reversed solely as to paragraphs 1 and 3 thereof; both the aforesaid preliminary injunction order of March 20, 1959, and the supplementary injunctive order of April 17, 1959, are affirmed in all other respects; and this cause is remanded for further proceedings in conformity with the foregoing opinion.
 
 
 27
 Reversed and remanded in part.
 
 
 28
 Affirmed in part.
 
 
 29
 MERCER, District Judge (dissenting in part).
 
 
 30
 I concur in the Court's opinion insofar as the majority holds that the temporary injunction restraining removal of the molds and requiring that Bargen withdraw his notice of cancellation of the contract was properly issued. The exercise of that power by the trial judge was entirely reasonable and proper for the purpose of maintaining the status quo pending disposition of the litigation.
 
 
 31
 I am constrained to disagree with the decision of the majority of the court that this case must be reversed and remanded, in part, because the injunction incorporated other documents by reference in violation of Rule 65(d), (Fed.Rules Rules Civ.Proc., 28 U.S.C.A.), notwithstanding the fact that appellant approved the injunction order prior to the time it was entered by the trial court.
 
 
 32
 I agree that the provisions of the Rule arr mandatory, and that, in the particulars noted, the injunction entered by the trial court does not comply therewith. I would agree also that the injunction order should be reversed if the consent element were removed from the case. A brief review of the factual background of the issuance of this injunction reveals, however, that consent is a decisive element to be considered.
 
 
 33
 After the hearing upon plaintiff's application for a temporary injunction Judge Tehan indicated that he would enter a decree for the issuance of an injunction in accordance with the prayer of the application. He then instructed plaintiff's counsel to prepare findings of fact, conclusions of law and a proposed decree for injunction and to make the same available to appellant's counsel for approval as to form. Appellant's counsel were allowed 3 days to prepare and present any objections which they might have to the injuction order. The findings, conclusions and proposed decree were submitted to appellant's counsel pursuant to that agreement. No objections whatsoever were presented to the court at that time. Instead, counsel endorsed appellant's approval in writing upon the original papers before the same were submitted to the trial judge for his signature. The preliminary injunction issued by the trial court is in precisely the same form which defendant there approved.
 
 
 34
 In my opinion, the only issue is the narrow question whether appellant, by his approval of the proposed decree, has waived his right to now assert that the injunction does not comply with the provisions of the Rule. No public policy considerations enter into the picture. The pending case is a private suit. All persons directly affected by the injunction were before the court. I think we must assume that appellant's approval of the form of the injunction order was given with knowledge of the scope of the order, notwithstanding the incorporation therein of other documents by reference. Accordingly, I would hold that appellant consented, not only that the proposed decree embodied the indicated decision of the court and nothing more, but also, that an injunction might issue in the precise language of the decree, notwithstanding the provisions of the Rule to the contrary.
 
 
 35
 Rule 65(d) merely embodies accepted equitable principle, as theretofore embodied in 38 Stat. 738 (1914), (See Commentaries to Rule 65, 28 U.S.C.A.), that an injunction must specifically describe the acts or practices restrained. That principle, the prior statute, and, now the Rule, do no more than create a right in the party against whom an injunction runds to demand precision of language for his protection. I can conceive of no logical reason why that right might not be waived.
 
 
 36
 To say that no waiver arises because the Rule is mandatory is to beg the question. The Bill of Rights is mandatory, but essentially every right created thereby for the protection of the individual, which involves no question of power to act, may be waived by inaction or by positive action intelligently pursued,[1] unless a declaration of waiver would be unconscionable or would lead to a gross miscarriage of justice. The mandate of the Rule that an injunction may not describe the acts enjoined by reference to other documents, should be construed to have no greater durability than mandatory provisions of the Bill of Rights. Cf., Swift & Co. v. United States, 276 U.S. 311, 327-329, 48 S.Ct. 311, 315, 72 L.Ed. 587.
 
 
 37
 In the Swift case, which was decided prior to adoption of the Rule, it was contended that an injunction which had been issued in conformity with a stipulation, was void because it was entered without support of any findings of fact and because it was too general in that it restrained defendants, inter alia, from entering into any combination 'in restraint of trade or commerce among the several states,' or 'using any illegal trade practices of any nature whatsoever in relation to the conduct of any business in which (defendants)' might be engaged. The court characterized each of the asserted errors as an error of decision, merely, which was waived by defendants' consent to the decree.
 
 
 38
 I would apply both logic and the principle announced in the Swift case to the decision of this issue and construe appellant's approval of the proposed decree of the court as a consent to the issuance of an injunction framed in the precise language approved. While it is true that the integrity of the edict of precision in injunctions should be protected by the courts, it is equally as important for the courts to maintain the integrity of consent and approved decrees. We are dealing with neither any substantive question, nor any question of injustice which would shock the conscience and compel correction. What we are dealing with is a question of form alone. The injunction does not set forth with precision the acts and practices restrained, but appellant invited that very lack of precision. I feel that the majority opinion can only lead trial judges to wonder whether they can ever act in accordance with a stipulation of the parties to a suit if an order entered in reliance thereon may be reviewed and reversed by a court of appeals, notwithstanding the fact of the stipulation.
 
 
 39
 It may well be that a part of this injunction is too vague and uncertain to be enforceable, but that is a condition which the parties created by consent and a bridge which we do not now have to cross. The only issue with which we are now concerned is whether appellant has waived his right to demand that there be strict compliance with the Rule.
 
 
 40
 I am convinced that he has waived that right and I would affirm in toto.
 
 
 
 [1]
 Every constitutional right which exists for the protection of the individual, and which involves no question of power to act, may be waived by consent, or, in the case of many rights, by mere failure to assert the right. United States v. Jones, 7 Cir., 177 F.2d 476; Barkman v. Sanford, 5 Cir., 162 F.2d 592, certiorari denied 332 U.S. 816, 68 S.Ct. 155, 92 L.Ed. 393
 See United States v. McIntosh, D.C.D.Va., 2 F.Supp. 244, appeal dismissed 4 Cir., 70 F.2d 507, certiorari denied 293 U.S. 586, 55 S.Ct. 101, 79 L.Ed. 682, holding that failure to make a timely objection was a waiver of the right to demand due process of law and strict compliance with statutory requirements in an eminent domain proceeding.