**E. W. BLISS COMPANY, Appellee,**

v.

**STRUTHERS–DUNN, INC., P. G. Bartlett, L. K. Clark, D. E. Henry and J. A. Dinges, Appellants.**

**No. 19458.**

United States Court of Appeals Eighth Circuit.

March 28, 1969.

Rehearing Denied May 2, 1969.

William D. Hall, Washington, D. C., for appellants; Max Putnam, Des Moines, Iowa, and Ellis Dickens, Davenport, Iowa, on the brief.

James H. Tilberry, of Meyer, Tilberry & Body, Cleveland, Ohio, for appellee;

Robert B. Sundheim and H. D. Cooper, Cleveland, Ohio, and Richard M. McMahon, of Betty, Neuman, McMahon, Hellstron & Bittner, Davenport, Iowa, and Isador I. Katz, of Katz, McAndrews, Durkee & Telleen, Rock Island, Ill., on the brief.

Before VAN OOSTERHOUT, Chief Judge, MATTHES and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Appellants-defendants Struthers-Dunn, Inc. ("Struthers"), P. G. Bartlett, L. K. Clark, D. E. Henry and J. A. Dinges appeal pursuant to 28 U.S.C. § 1292(a) (1) from the entry of a preliminary injunction in the United States District Court for the Southern District of Iowa. The facts are reported in the trial court's memorandum opinion, at 291 F.Supp. 391, and will be restated here only insofar as necessary.

Bartlett, Clark, Henry and Dinges are all former employees of the Eagle Signal Division ("Eagle") in Davenport, Iowa, a division of appellee-plaintiff E. W. Bliss Company.[1] Eagle is a manufacturer of traffic control systems, industrial timers, and components used in systems controlling manufacturing and other industrial processes. For the purpose of converting its mechanical or electro-mechanical control systems to "solid-state",[2] Eagle hired Bartlett, an engineer characterized in the record as a genius in the field of solid-state electronic engineering and Clark and Henry, both recent recipients of degrees in electrical engineering. The trial court found that, while at Eagle, each of these men and Dinges, who was employed as a salesman, gained experience in solid-state engineering and had knowledge of the product developments at Eagle.

In March of 1967, Bartlett, Clark, Henry and Dinges, dissatisfied with the wage and promotion policies at Eagle, discussed leaving Eagle to form a new company in the solid-state process control field. In June of the same year, they met with representatives of Struthers, which was engaged in manufacturing process control systems but had limited experience using solid-state components and circuitry, to discuss possible financing of the enterprise. After a series of meetings with Struthers, the individual defendants decided to work for Struthers in the field of solid-state engineering at a new Systems Division which Struthers would establish in Bettendorf, Iowa, a short distance from Davenport. Between October 10 and October 13, 1967, Bartlett, Clark, Henry and Dinges each submitted their resignations to Eagle. Struthers' Bettendorf plant opened on October 15, 1967.

On December 6, 1967, Bliss filed the present action seeking injunctive relief and alleging breach of contract[3] and

1. Subsequent to the filing of the complaint seeking the injunction, Bliss became a wholly-owned subsidiary of Gulf & Western Industries.

2. The trial court characterized solid-state electronics as follows:
   "The technical subject matter involved in this proceeding relates to the field of solid state electronics. Some small amount of work in solid state electronics began as early as 1912; however, it was not until the development of the transistor at about 1948 that the solid state field began rapidly to expand. Since that time, giant strides have been made in the solid state field and there are a large number of companies and tens of thousands of electronics engineers working in diverse areas of solid state electronics. Some examples of these areas are computers, radio receivers and transmitters, television receivers, telemetering, telephone systems, antennas and transistors. In addition to these areas, the field of solid state electronics includes the specific areas on which Eagle is doing development work, as identified in its complaint and Exhibit B attached to the complaint. Even within the areas in which Eagle is working, there are many specialized sub-areas within the broad areas. The field of solid state electronics is extremely complex with a tremendous number of solid state devices having been developed, most differing in some respects, one from another." 291 F. Supp. at 393.

3. Bartlett, Clark, Henry and Dinges each signed an Eagle employment application which contained the following provisions:
   "1. In consideration of my employment by the E. W. Bliss Company and the wages to be paid me, I agree that

fiduciary duty by Bartlett, Clark, Henry and Dinges and unfair competition by all the defendants.[4]

After an ex parte hearing on December 7, 1967, the district court determined that there was a likelihood of wrongful disclosure of the trade secrets of Eagle and accordingly issued a temporary restraining order enjoining the unauthorized use of Eagle's trade secrets, the employment by Struthers of the individual defendants, and the operation by Struthers of a solid-state engineering division within five hundred miles of Davenport, Iowa. This order was modified on December 19, 1967, to restrain Struthers from employment of the individual defendants or establishment of a new facility only if such activity would be "involving" the alleged trade secrets of Eagle. The order was continued in this form until September 18, 1968, when the district court entered a preliminary injunction from which this appeal is taken.[5]

the E. W. Bliss Company shall be entitled to and I will promptly and fully disclose, transfer and deliver to it, any and all ideas, inventions, devices and improvements, whether patentable or not, and patent applications, both United States and Foreign, originating with, acquired, conceived, or delivered by me, solely or jointly, during the period of my employment, so far, the same relate to or may be useful in the business of the Company, as of now or at any time hereafter carried on, including experimental, and research work; and I further agree that I will, from time to time, both during and after my employment, sign all papers and perform all acts necessary, proper or expedient, including the giving of evidence and testimony, to make this agreement effective.

2. I further agree that I will neither disclose to any other person, firm or corporation nor use for my personal benefit, during or after my employment relating to the Company's confidential affairs, experimental and research work, its secrets, inventions, methods, processes, tools, machinery, formulas, drawings or appliances, unless specifically authorized in writing by the Company.

3. This agreement shall apply not only to the business of the Company, but also to the business of its successors, and its subsidiaries, parent, affiliated and commonly controlled corporations during the period of my employment. Should I be employed by or transferred to a successor, or to a subsidiary, parent, affiliated or commonly controlled corporation, this agreement shall be continued as a part of my employment agreement.

4. As a matter of record, the undernoted is a complete list of all inventions and improvements, patented or unpatented, which I have made or conceived prior to my employment, and I desire that these inventions and improvements shall be excluded from this agreement.

5. The terms hereof are expressed and made a part of my employment agreement and of any subsequent employment agreement and shall not be waived or modified except by a instrument in writing signed by an officer of the Company."

4. Prior to the commencement of this action, the defendants filed suit against Bliss in the United States District Court for the Eastern District of Pennsylvania seeking, in addition to injunctive relief, a declaratory judgment that Eagle had no trade secrets and that Bartlett, Clark, Henry and Dinges were free to use all information acquired at Eagle. This action was transferred to the Southern District of Iowa pursuant to 28 U.S.C. § 1404(a). The defendants have amended their complaint by alleging slander and an antitrust violation on the part of Bliss.

5. The preliminary injunction reads:
"It Is Ordered that until further Order of this Court:

(a) All defendants separately and jointly are restrained from using or disclosing trade secrets and confidential technical information of plaintiff to any person, firm or corporation.

(b) Defendant Struthers-Dunn is restrained from employing defendants Bartlett, Clark, Henry and Dinges to engage in designing, manufacturing, selling, promoting or consulting in the following fields of solid state engineering:

(1) Time delay relays of the split coil type employing solid state circuitry.

(2) Solid state step switches employing binary information storage memory means.

(3) Process control systems and components incorporating solid state cir-

The parties do not contest the trial court's finding that Iowa law controls on the question of breach of contract and fiduciary duty.

■■■ Initially, we note that in Sandlin v. Johnson, 141 F.2d 660 (8th Cir. 1944), this Court recognized and approved the general rule that a trade secret consists of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. See also, Restatement, Torts, § 757. The essential elements of a cause of action for appropriation of a trade secret are (1) existence of a trade secret, (2) acquisition of the secret as a result of a confidential relationship, and (3) unauthorized use of the secret. Venn v. Goedert, 319 F.2d 812, 815 (8th Cir. 1963); Sandlin v. Johnson, *supra*; Restatement, Torts, § 757. In general, the essence of the wrong is the obtaining of unjust enrichment and unfair competitive advantage through inequitable conduct. Servo Corp. of America v. General Electric Co., 393 F.2d 551, 555 (4th Cir. 1968); Atlantic Wool Combing Co. v. Norfolk Mills, Inc., 357 F.2d 866, 869 (1st Cir. 1966). It is well settled that an injunction may issue to prevent the unauthorized disclosure and use of trade secrets. See, for example, Imperial Chemical Industries, Ltd. v. National Distillers & Chemical Corp., 354 F.2d 459, 19 A.L.R.3d 492 (2nd Cir. 1965); Winston Research Corp. v. Minnesota Mining & Mfg. Co., 350 F.2d 134 (9th Cir. 1965); Sandlin v. Johnson, *supra*. This protection given to trade secrets is a shield, sanctioned by the courts, for the preservation of trust in confidential relationships; it is not a sword to be used by employers to retain employees by the threat of rendering them sub-

cuitry for use in controlling the operation of industrial machinery.

(4) Ferroelectric capacitor structures for storing binary information.

(5) Non-linear solid state amplifiers applicable for driving a synchronous motor.

(6) Traffic control apparatus of the solid state type.

(7) Apparatus for converting binary coded decimal numbers as disclosed in plaintiff's Exhibit 48 (Plaintiff's patent application BE 2960).

(c) Defendants are restrained from contacting or disclosing customers or proposed customers of plaintiff involving solid state control systems or components thereof either for process machines such as that designated *Machine X* or for any other machines to which such control systems and/or components are applicable.

(d) Defendant Struthers-Dunn is restrained from maintaining within 50 miles of Davenport, Iowa a division or facility for designing, manufacturing, selling, promoting or consulting in the following fields of solid state engineering:

(1) Time delay relays of the split coil type employing solid state circuitry.

(2) Solid state step switches employing binary information storage memory means.

(3) Process control systems and components incorporating solid state cir-

cuitry for use in controlling the operation of industrial machinery.

(4) Ferroelectric capacitor structures for storing binary information.

(5) Non-linear solid state amplifiers applicable for driving a synchronous motor.

(6) Traffic control apparatus of the solid state type.

(7) Apparatus for converting binary coded decimal numbers to decimal numbers as disclosed in plaintiff's Exhibit 48 (Plaintiff's patent application BE 2960). ,

(e) Defendants are restrained from contacting or disclosing any and all of the customers and/or potential customers identified in plaintiff's Exhibit 5C (plaintiff's inquiry cards and correspondence) with respect to products of the type or class on which information was requested by such customers.

(f) Nothing in the preceding paragraphs of this preliminary injunction shall operate to limit the business activities of defendant Struthers-Dunn in any field or activity in which it had competence prior to the hiring of individual defendants Bartlett, Clark, Henry and Dinges.

It Is Further Ordered that plaintiff post bond or other security in the amount of $100,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined."

stantially unemployable in the field of their experience should they decide to resign. This shield is not a substitute for an agreement by the employee not to compete with his employer after the termination of employment. Basically, an employer may not restrict an employee's future employment except by an agreement embodying reasonable terms. See, for example, the opinion of Judge Learned Hand in Harley & Lund Corp. v. Murray Rubber Co., 31 F.2d 932, 934 (2nd Cir. 1929). See also, Orkin Exterminating Co. v. Burnett, 259 Iowa 1218, 146 N.W.2d 320 (1966); Baker v. Starkey, 259 Iowa 480, 144 N.W.2d 889 (1966); Mutual Loan Co. v. Pierce, 245 Iowa 1051, 65 N.W.2d 405 (1954); Universal Loan Corp. v. Jacobson, 212 Iowa 1088, 237 N.W. 436 (1931).

In the present case, there is no agreement not to compete nor is there a contract for a specific term of employment. Compare, Orkin Exterminating Co. v. Burnett, *supra*; Baker v. Starkey, *supra*. Accordingly, Bartlett, Clark, Henry and Dinges were entitled to resign from Eagle's employ for a good reason, a bad reason, or no reason at all, and are entitled to pursue their chosen field of endeavor in direct competition with Eagle so long as there is no breach of a confidential relationship with Eagle. Baker v. Starkey, *supra,* 144 N.W.2d at 897;[6] Mutual Loan Co. v. Pierce, *supra,* 65 N.W.2d at 408; Universal Loan Corp. v. Jacobson, *supra.* See, Brecher v. Brown, 235 Iowa 627, 17 N.W.2d 377 (1945); H. W. Gossard Co. v. Crosby, 132 Iowa 155, 109 N.W. 483, 6 L.R.A., N.S., 1115 (1906).

It is clear that the granting or denial of a preliminary injunction is properly a matter within the sound discretion of the trial court and that the function of an appellate court is limited to determining that there has been no abuse of this discretion. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Deckert v. Independence Shares Corp., 311 U.S. 282, 290, 61 S.Ct. 229, 85 L.Ed. 189 (1940); Baggett Transportation Co. v. Hughes Transportation, Inc., 393 F.2d 710, 714 (8th Cir. 1968), cert. denied, 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272 (1968); Holzer v. United States, 244 F.2d 562, 564 (8th Cir. 1957); Benson Hotel Corp. v. Woods, 168 F.2d 694 (8th Cir. 1948).

The trial court's entry of the preliminary injunction is, of course, subject to the dictate of Federal Rule of Civil Procedure 65(d) that:

> "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained * * *"

In light of these principles, we shall examine, section-by-section, the order of the lower court.

Section (a) of the order reads:
> "(a) All defendants separately and jointly are restrained from using or disclosing trade secrets and confidential technical information of plaintiff to any person, firm or corporation."

The findings of fact by the trial court describe certain areas of the electronics field in which Eagle claims to have trade secrets. For example, Eagle has developed "a split coil time delay relay", "a solid state traffic controller", "a device for converting binary coded decimal numbers to decimal numbers", and "a certain technique * * * for testing traf-

---

6. As stated by the Supreme Court of Iowa in *Baker:*
   "[A]n employer has no right to unnecessarily interfere with the employee following any trade or calling for which he is fitted and from which he may earn his livelihood and he cannot be precluded from exercising the skill and general knowledge he has acquired or increased through experience or even instructions while in the employment." 144 N.W.2d at 897.

fic controllers". The lower court did not find that these items were in and of themselves the trade secrets of Eagle but merely that they incorporated certain design or engineering concepts that were not prior art. These new or different concepts are not specified in the findings of fact or discernible from the context of the order and are apparently presumed as being known by all the defendants, including Struthers. The lower court appears inclined to let the defendants reach the legal conclusion that a particular design concept is a "trade secret" of Eagle. These defendants would then be able to test their legal opinion on the law of trade secrets and their technical opinion on the state of the prior art in a proceeding to show cause why they should not be held in contempt. We feel that the vagueness of the section, even when read in the context of the entire injunction, places an unduly harsh burden on the defendants, especially on Struthers which is presumed to know all the confidential technical information of Eagle, and is not in accord with the mandate of Rule 65 that a preliminary injunction "shall be specific in terms". International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 74–76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967); United States v. Vitasafe Corp., 345 F.2d 864, 871 (3rd Cir.), cert. denied, 382 U.S. 918, 86 S.Ct. 290, 15 L.Ed.2d 232 (1965); Farrell v. Danielson, 296 F.2d 39 (9th Cir. 1961); Brumby Metals, Inc. v. Bargen, 275 F.2d 46, 49 (7th Cir. 1960). See, Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, 125–126, 68 S. Ct. 947, 92 L.Ed. 1245 (1948); NLRB v. Express Publishing Co., 312 U.S. 426, 435–436, 61 S.Ct. 693, 85 L.Ed. 930 (1941); Williams v. United States, 402 F.2d 47, 48 (10th Cir. 1967); Brotherhood of Railroad Carmen, etc. v. Chicago & North Western R. Co., 354 F.2d 786, 799–800 (8th Cir. 1965); Winston Research Corp. v. Minnesota Mining & Mfg. Co., 350 F.2d 134, 143 (9th Cir. 1965); John T. Lloyd Laboratories, Inc. v. Lloyd Brothers Pharmacists, Inc., 131 F.2d 703, 707 (6th Cir. 1942); 7 Moore's Federal Practice ¶65.11 (1968 ed.). Cf. Servo Corp. of America v. General Electric Co., *supra*, 393 F.2d at 556.

■ Section (b) of the order reads:

"(b) Defendant Struthers-Dunn is restrained from employing defendants Bartlett, Clark, Henry and Dinges to engage in designing, manufacturing, selling, promoting or consulting in the following fields of solid state engineering:

(1) Time delay relays of the split coil type employing solid state circuitry.

(2) Solid state step switches employing binary information storage memory means.

(3) Process control systems and components incorporating solid state circuitry for use in controlling the operation of industrial machinery.

(4) Ferroelectric capacitor structures for storing binary information.

(5) Non-linear solid state amplifiers applicable for driving a synchronous motor.

(6) Traffic control apparatus of the solid state type.

(7) Apparatus for converting binary coded decimal numbers as disclosed in plaintiff's Exhibit 48 (Plaintiff's patent application BE 2960)."

This section of the order is excessively broad and consequently invalid since it goes far beyond restraining unlawful conduct on the part of the defendants. The seven areas in which the defendants are not to be employed reflect the trial court's findings that Eagle possesses certain undescribed secrets within these generically-defined areas. The danger of generic description of "trade secrets", based on general and vague findings of fact, is that the individual defendants are restrained from engaging in perfect-

ly lawful employment without regard to the scope of the claimed trade secrets. Eagle does not claim that it alone possesses as a trade secret "time delay relays of the split coil type employing solid state circuitry", "solid state process control systems" or "solid state traffic control apparatus". Yet this order prevents the defendants from competing in these broad fields. The mischief of such an order is that a court may find that an employer possesses a trade secret in a wide field, such as electronic computers · and process control systems, and even though the secret may relate to a minute detail within this wide field, the court could enjoin former employees from working in this field for anyone but the present employer. Although Eagle is entitled to protection of its trade secrets, section (b) far exceeds that service and has the effect of subjecting former employees of Eagle to a judicially-created non-competition agreement with Eagle simply on the allegation of vague and ill-defined "trade secrets" to which the employees may have been privy.

Section (b) similarly inhibits lawful competition on the part of Struthers. To remain an effective competitor, Struthers must be active in the field of solid state controls. Although it is not disputed that the use of solid state engineering in process controls is not the captive of the plaintiff, this order effectively gives Struthers the choice of restraining itself to antedated non-solid-state technology or being prevented from employing the individual defendants. The effect of either alternative is to afford Bliss unwarranted protection against legitimate competition.

In Hampton v. Blair Mfg. Co., 374 F.2d 969, 973 (8th Cir.), cert. denied, 389 U.S. 829, 88 S.Ct. 87, 19 L.Ed.2d 85 (1967), on consideration of a permanent injunction protecting trade secrets, we disapproved of "broad language [which] would prohibit the use of much ordinary and uncomplicated stock equipment such as wheels, axles, frames, flooring and siding". Similarly, in Brotherhood of Railroad Carmen, etc. v. Chicago & North Western R. Co., *supra,* 354 F.2d at 800, this Court held an injunction overbroad since it went "far beyond enjoining just the conduct of the minor dispute giving rise to it and thus is in violation of traditional concepts of judicial restraint in equity matters". In Corica v. Ragen, 140 F.2d 496, 499 (7th Cir. 1944), the Seventh Circuit dissolved a preliminary injunction "because it is too broad and sweeping. It enjoins * * * defendants * * * without * * * limiting the restraint to unlawful acts of defendants". See, Winston Research Corp. v. Minnesota Mining & Mfg. Co., *supra,* 350 F.2d at 143; Sarkes Tarzian, Inc. v. Audio Devices, Inc., 166 F.Supp. 250, 262 (S.D.Cal.1958), aff'd per curiam, 283 F.2d 695 (9th Cir. 1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed. 2d 859 (1961); Hygrade Food Products Corp. v. United States, 160 F.2d 816 (8th Cir. 1947); John T. Lloyd Laboratories, Inc. v. Lloyd Brothers Pharmacists, Inc., *supra,* 131 F.2d at 707; 7 Moore's Federal Practice ¶65.11 (1968 ed.). Our holding is not in conflict with Hulsenbusch v. Davidson Rubber Co., 344 F.2d 730 (8th Cir. 1965), cert. denied, 382 U.S. 977, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966), in which we specifically considered an employee agreement not to compete.

It should also be observed that section (b) (7) of the order is also invalid under the mandate of Rule 65(d) that the order "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained". Brumby Metals, Inc. v. Bargen, *supra;* 7 Moore's Federal Practice ¶65.11 at 1665 (1968 ed.).

■ In light of the foregoing discussion, we turn to section (c) of the order which reads:

"(c) Defendants are restrained from contacting or disclosing customers or proposed customers of plaintiff involving solid state control systems or

components thereof either for process machines such as that designated *Machine X* or for any other machines to which such control systems and/or components are applicable."

Clearly this section is excessively vague. We are not aided by the findings of fact nor by the order itself in determining the identity of the customers or *proposed* customers of the plaintiff and we must presume that the defendants, especially Struthers, are beset by this same problem. Not only is it unclear whom the defendants may or may not contact, but a cloud also surrounds the nature of "Machine X" which is not defined in the findings of fact nor found to be an Eagle trade secret. The vagueness is compounded by the inclusion of the restraint as to "any other machines to which such control systems and/or components are applicable". This is in clear violation of the dictate of Rule 65 that the order "shall be specific in terms". United States v. Vitasafe Corp., *supra*, 345 F.2d at 871; Farrell v. Danielson, *supra;* Brumby Metals, Inc. v. Bargen, *supra*, 275 F.2d at 49.

■ Aside from the vagueness, the order is far broader than is warranted by the findings of fact. There was no finding that a "customer list", confidential to Eagle and not readily available to its competitors, had been stolen or misused by the defendants. Indeed, the only relevant finding of fact states: "Dinges was provided confidential sales information such as inquiry cards submitted by potential customers of Eagle products (PX 5C)". (Finding of Fact No. 26.) We feel that the trial court abused its discretion in entering this sweeping order on such a scant finding. Aerosonic Corp. v. Trodyne Corp., 402 F.2d 223, 230 (5th Cir. 1968); Corica v. Ragen, *supra*; Universal Loan Corp. v. Jacobson, 212 Iowa 1088, 237 N.W. 436 (1931). See, Hampton v. Blair Mfg. Co., *supra*, 374 F.2d at 973; Alberti v. Cruise, 383 F.2d 268 (4th Cir. 1967); Brotherhood of Railroad Carmen, etc. v. Chicago

& North Western R. Co., *supra*, 354 F.2d at 799–800; Hygrade Food Products Corp. v. United States, *supra*; H. W. Gossard Co. v. Crosby, *supra*. The order, as entered is so broad that it effectively prevents Struthers from competing in a wide area with Eagle and thereby deprives Struthers and the individual defendants of a right lawfully theirs. Eagle has no proprietary interest in its customers or *proposed customers* and will not be allowed to assert one under the guise of protecting its trade secrets. Corica v. Ragen, *supra*; Universal Loan Corp. v. Jacobson, *supra*.

■ The vagueness and excessive breadth of this order also taints section (d) which reads:

"(d) Defendant Struthers-Dunn is restrained from maintaining within 50 miles of Davenport, Iowa a division or facility for designing, manufacturing, selling, promoting or consulting in the following fields of solid state engineering:

(1) Time delay relays of the split coil type employing solid state circuitry.

(2) Solid state step switches employing binary information storage memory means.

(3) Process control systems and components incorporating solid state circuitry for use in controlling the operation of industrial machinery.

(4) Ferroelectric capacitor structures for storing binary information.

(5) Non-linear solid state amplifiers applicable for driving a synchronous motor.

(6) Traffic control apparatus of the solid state type.

(7) Apparatus for converting binary coded decimal numbers to decimal numbers as disclosed in plain-

tiff's Exhibit 48 (Plaintiff's patent application BE 2960)."

Struthers opened a plant in Bettendorf, Iowa, for the purpose of employing Bartlett, Clark, Henry and Dinges. Struthers is free to compete with Eagle in the electronics field in any geographical area. As we have noted, in the absence of a non-competition agreement or a contract for a specific term of employment, Bartlett, Clark, Henry and Dinges are entitled to resign from Eagle and work for a competing company, which has the right to lawfully solicit their talent. Thus, the only legitimate purpose of section (d) is to protect the trade secrets of Eagle. For this purpose, section (d) is excessively broad and will not stand. The seven categories within this section are substantially identical to those in section (b) which is discussed above and found invalid. We believe that same analysis applies to both sections. We should not allow this injunction to achieve a restraint on trade which, had Struthers and Eagle voluntarily assumed, would be of questionable validity.

This leaves only section (e) of the order, which reads:

"(e) Defendants are restrained from contacting or disclosing any and all of the customers and/or potential customers identified in plaintiff's Exhibit 5C (plaintiff's inquiry cards and correspondence) with respect to products of the type or class on which information was requested by such customers."

This section is clearly invalid under the mandate of Rule 65(d) that the order "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained". Our discussion of section (c) applies equally to section (e).

We find no part of the preliminary injunction to be valid and, accordingly, the order granting the preliminary injunction is set aside and the cause remanded to the district court.